# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

THOMAS FOSTER,
                    *Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA,
                    *Defendant-Appellee.*

No. 06-56843

D.C. No.
CV-05-02124-DMS

OPINION

Appeal from the United States District Court
for the Southern District of California
Dana M. Sabraw, District Judge, Presiding

Argued and Submitted
March 6, 2008—Pasadena, California

Filed April 16, 2008

Before: John R. Gibson,* Diarmuid F. O'Scannlain, and
Susan P. Graber, Circuit Judges.

Opinion by Judge Graber

*The Honorable John R. Gibson, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

**COUNSEL**

Richard M. Barnett, San Diego, California, for the plaintiff-appellant.

David B. Wallace, Assistant United States Attorney, San Diego, California, for the defendant-appellee.

**OPINION**

GRABER, Circuit Judge:

Plaintiff Thomas Foster sued the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), alleging that agents of the Bureau of Alcohol, Tobacco, and Firearms ("ATF") damaged hundreds of his handguns and long guns, as well as ammunition and packaging, which the ATF agents had seized. The district court dismissed the action for lack of subject matter jurisdiction. Specifically, the court ruled that the government had seized the property for the purpose of criminal investigation, not forfeiture, so the "detention of goods" exception to the FTCA, 28 U.S.C. § 2680(c), applied. We affirm.

FACTUAL AND PROCEDURAL HISTORY

Because the district court dismissed the action for lack of subject matter jurisdiction, we take the facts from Plaintiff's Second Amended Complaint. *GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1173 (9th Cir. 2002). On July 28 and July 31, 2000, ATF agents who were executing search warrants seized a large number of firearms—more than 800 in all —and ammunition from storage spaces rented by Plaintiff. The search warrants authorized federal officers to seize the property as "contraband, evidence of the crime, fruits of the crime, [and/or] instruments of the crime" of trafficking in illegal firearms. When the warrants were executed, Plaintiff was in custody pursuant to federal firearms charges in a separate criminal matter. He was later acquitted.[1]

On April 10, 2001, the ATF sent Plaintiff a letter stating that the property seized on July 31, 2000, was seized by the

---

[1]Plaintiff's son, Cornelio Thomas Foster-Torres, was the subject of the criminal investigation that led to the issuance and execution of the search warrants. The parties do not suggest that this fact alters the analysis.

ATF for forfeiture. In addition, the letter stated that the property was subject to forfeiture under chapter 44 of Title 18 of the U.S. Code, the federal criminal firearms provision, and that administrative forfeiture proceedings had commenced.

On September 1, 2001, the United States initiated a civil forfeiture action against some of the seized property. Plaintiff opposed that forfeiture action and, eventually, reached an agreement with the United States for a stipulated judgment, whereby Plaintiff would pay storage charges for the property and the United States would return all but 50 of the firearms. Plaintiff "specifically retained[ed] the right to bring an action against the United States for post-seizure, pre-return damage to the firearms returned under [the] Stipulated Judgment of Forfeiture."

Thereafter, Plaintiff submitted a claim to the ATF for $189,881. After the ATF denied his claim, Plaintiff filed this action.

Plaintiff's complaint alleges negligence by employees of the United States, which caused damage to the "hundreds of handguns, long guns, ammunition, smokeless powder, lead bullets, and jacketed bullets" seized on July 28 and July 31, 2000. The allegations state that, "[d]uring the course of inventorying and of defendant's custody of said property, . . . [the United States] damaged the firearms, lost parts to firearms, destroyed the packaging various firearms were contained in, mixed ammunition, destroyed the packaging for collectors ammunition, and destroyed other packaging." Plaintiff claims that this negligence resulted in property damage totaling $189,881.

The United States moved to dismiss the action under Federal Rule of Civil Procedure 12(h)(3). The government argued that the district court lacked subject matter jurisdiction because the United States had not waived sovereign immunity with respect to Plaintiff's claim. After a hearing, the district

court granted the motion and entered a judgment dismissing the action. Plaintiff now brings this timely appeal.

## STANDARD OF REVIEW

We review de novo a district court's dismissal of an action for lack of subject matter jurisdiction, *Campbell v. Redding Med. Ctr.*, 421 F.3d 817, 820 (9th Cir. 2005), and likewise review de novo a district court's interpretation of federal forfeiture law, *United States v. Plunk*, 511 F.3d 918, 921 (9th Cir. 2007).

## DISCUSSION

**[1]** The FTCA waives sovereign immunity for claims against the federal government arising from torts committed by federal employees. 28 U.S.C. § 1346(b)(1). Certain categories of claims are exempt from the waiver of sovereign immunity, however, including "[a]ny claim arising in respect of . . . the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer." *Id.* § 2680(c). This exception, referred to as the "detention of goods" exception, *see, e.g.*, *Cervantes v. United States*, 330 F.3d 1186, 1189 (9th Cir. 2003), generally is interpreted broadly. For example, in *Kosak v. United States*, 465 U.S. 848, 854 (1984), the Supreme Court held that the detention of goods exception applies not only to intentional conduct by government employees, but also to "any claim 'arising out of' the detention of goods, . . . includ[ing] a claim resulting from negligent handling or storage of detained property." Similarly, the Supreme Court recently resolved a circuit split in favor of a more expansive construction of the FTCA when it rejected an argument that the detention of goods exception is limited to law enforcement officers who are involved in customs or excise activities. *Ali v. Fed. Bureau of Prisons*, 128 S. Ct. 831, 841 (2008). The Court held that the FTCA "maintain[s] sovereign immunity for the *entire universe of claims* against law enforcement officers . . . 'arising

in respect of' the 'detention' of property." *Id.* (emphasis added); *accord Bramwell v. U.S. Bureau of Prisons*, 348 F.3d 804, 808 (9th Cir. 2003) (same). These broad interpretations of the detention of goods exception to the FTCA comport with the well-established principle that waivers of sovereign immunity must be construed strictly in favor of the sovereign. *Lane v. Pena*, 518 U.S. 187, 192 (1996); *United States v. 87 Skyline Terrace*, 26 F.3d 923, 929 (9th Cir. 1994).

**[2]** Through the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub. L. No. 106-185, § 3, 114 Stat. 202, 211, Congress added paragraphs (1) - (4) to 28 U.S.C. § 2680(c). Those new paragraphs provide that the waiver of sovereign immunity in 28 U.S.C. § 1346(b) applies to damage to property while in the possession of certain government employees, including law enforcement officers, if:

> (1) the property was *seized for the purpose of forfeiture* under any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense;

> (2) the interest of the claimant was not forfeited;

> (3) the interest of the claimant was not remitted or mitigated (if the property was subject to forfeiture); and

> (4) the claimant was not convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law.

28 U.S.C. § 2680(c) (emphasis added). In short, CAFRA canceled the detention of goods exception and restored the waiver of sovereign immunity—or "re-waived" sovereign immunity—with respect to certain forfeiture-related seizures.

In this case, we are called on to determine whether sovereign immunity bars Plaintiff's claim. The government asserts that the FTCA's detention of goods exception applies to bar the claim. By contrast, Plaintiff maintains that the re-waiver of sovereign immunity applies because "the property was seized for the purpose of forfeiture," *id.* § 2680(c)(1), and, therefore, he may pursue this action.

Plaintiff makes two alternative arguments. He first contends, relying on the ATF's letter of April 10, 2001, that the government all along had a dual purpose for executing the search warrants: seizure of evidence of a crime *and* seizure of property for forfeiture. In Plaintiff's view, because one purpose for the seizure was forfeiture, the re-waiver of sovereign immunity in § 2680(c)(1)-(4) applies. In the alternative, he argues that the re-waiver of sovereign immunity in § 2680(c)(1)-(4) was triggered the moment the government decided to pursue forfeiture. In this argument, Plaintiff contends that, even if forfeiture was not a reason for the *initial* seizure, the property was seized for the purpose of forfeiture at that later point so, again, § 2680(c)(1)-(4) applies.

The United States counters that the ATF agents had only law enforcement in mind as the purpose for the initial seizure. The government points to the warrants, which identified the property as potential evidence of a crime and which were contemporaneous with the seizures. The government argues that the statutory re-waiver applies only to property seized *initially* for the purpose of forfeiture, making irrelevant the later initiation of a forfeiture proceeding. The United States also asserts that even a dual purpose would not help Plaintiff, because the statutory re-waiver applies only to property seized *solely* for the purpose of forfeiture.

We agree with the government's second argument. We hold that, under CAFRA, the re-waiver of sovereign immunity in § 2680(c)(1)-(4) applies only to property seized solely for the purpose of forfeiture. Consequently, the fact that the

government may have had the possibility of a forfeiture in mind when it seized Plaintiff's property does not detract from the application of the detention of goods exception when criminal investigation was a legitimate purpose of the initial seizure.[2]

We note, at the outset, that the initial seizure and at least some of the alleged damage occurred before CAFRA's effective date of August 23, 2000, Pub. L. No. 106-185, § 21, 114 Stat. at 225 (codified at 8 U.S.C. § 1324 (note)), while all other relevant events occurred after the effective date. Consequently, it is not entirely clear whether CAFRA's amendments to 28 U.S.C. § 2680(c)(1)-(4)—the re-waiver of sovereign immunity—even apply at all. *See United States v. $80,180.00 in U.S. Currency*, 303 F.3d 1182, 1185 (9th Cir. 2002) (rejecting retroactive application of CAFRA and holding that CAFRA's heightened burden of proof applies only to a judicial forfeiture proceeding in which a complaint is filed on or after the statute's effective date). We need not resolve that uncertainly here. Whether we apply pre-CAFRA or post-CAFRA law, the district court lacked jurisdiction over Plaintiff's claim.

In the absence of CAFRA's re-waiver of sovereign immunity, Plaintiff's claim falls within the detention of goods exception under the Supreme Court's holding in *Kosak*. *Kosak* involved damage to an art collection that the United States Customs Service had seized pursuant to a valid warrant. 465 U.S. at 849. Kosak, the owner of the art collection, was tried for, but acquitted of, smuggling the art into the United States. *Id.* After his acquittal, Kosak received notice from the Customs Service that the art was subject to civil forfeiture. *Id.* at 849-50. Kosak successfully challenged the for-

---

[2]We need not and do not decide whether the CAFRA re-waiver would apply when the criminal investigative purpose of a seizure is pretextual. Here, even if the government had forfeiture in mind, there is no suggestion that the criminal investigative purpose of the seizure was not genuine.

feiture, and the property was returned to him. *Id.* at 850. When the property came back in damaged condition, Kosak brought an FTCA claim against the government, alleging that the property was damaged while in custody of the Customs Service. *Id.*

The Supreme Court held that 28 U.S.C. § 2680(c) barred Kosak's claim. *Id.* at 851. Analyzing the text of the statute, the Court explained that the provision " 'any claim arising in respect of' the detention of goods means any claim 'arising out of' the detention of goods, and includes a claim resulting from negligent handling or storage of detained property." *Id.* at 854.

The Supreme Court also explained that barring Kosak's claim was consistent with Congress' objectives in creating exceptions to the FTCA, namely:

> [E]nsuring that "certain governmental activities" not be disrupted by the threat of damage suits; avoiding exposure of the United States to liability for excessive or fraudulent claims; and not extending the coverage of the [FTCA] to suits for which adequate remedies were already available.

*Id.* at 858. The Court noted that exposing the Customs Service to claims such as the one brought by Kosak could dampen enforcement efforts, because the power to detain goods was one of the most important sanctions available to ensure compliance with customs laws. *Id.* at 859. Also, the limited resources of the Customs Service to inspect goods upon seizure meant that the Customs Service would not be in a position to protect itself from false and fraudulent claims. *Id.* Finally, characterizing the third rationale for barring Kosak's claim as relevant "to a lesser extent" than the others, the Court pointed out that a plaintiff such as Kosak had other avenues for redress and could bring a common law negligence action against an individual customs official, even though such a

claim would be difficult to establish. *Id.* at 860-61. Thus, the Court concluded, sovereign immunity barred Kosak's claim for the damage to his property. *Id.* at 862.

**[3]** Factually, *Kosak* is nearly indistinguishable from this action. Plaintiff's property was seized pursuant to valid warrants; he was not convicted of any relevant crimes; the government sought, but did not obtain, civil forfeiture; and Plaintiff filed an action for negligence "arising from" the detention of the property. Consequently, in the absence of any other law, under *Kosak*, the detention of goods exception to the FTCA's waiver of sovereign immunity bars Plaintiff's claim.

Plaintiff contends nevertheless that *Cervantes*, 330 F.3d at 1189, establishes grounds for the government's liability for the damage to his property. In *Cervantes*, which applied pre-CAFRA law but post-dated *Kosak*, we concluded that the detention of goods exception is not indelible and held that "an independent and intervening event from the detention itself" can result in a waiver of sovereign immunity. *Id.* No "independent and intervening event" occurred here.

*Cervantes* involved a vehicle that the United States Marshals Service sold to Cervantes without inspection. *Id.* at 1187-88. Unbeknownst to Cervantes and the Marshals Service, the vehicle had 119 pounds of marijuana secreted in its bumper. *Id.* Cervantes, who was arrested for possession of the marijuana while trying to bring the vehicle home, filed suit against the government under the FTCA, alleging negligence and asserting claims of false arrest and false imprisonment. *Id.* at 1188.

We rejected the government's contention that *Kosak* barred Cervantes' claim under the detention of goods exception to the FTCA. We explained that, although the government originally obtained the car "from [a] detention" before it was sold by the Marshals Service, Cervantes' claim did not "arise in

respect of . . . the detention." *Id.* at 1189 (internal quotation marks and alteration omitted). "The negligent act was the government's decision to sell the car without first inspecting it, an independent and intervening event from the detention itself." *Id.* In addition, we reasoned, none of the three policy rationales identified in *Kosak* was implicated by permitting the claim to go forward: There was "no analogous dampening effect of Cervantes' suit on the Customs Service's ability to protect our borders"; any excessive or fraudulent claims would arise "because the government decided to auction off cars, not because it detained or inspected goods"; and "Cervantes is entitled to recover, if at all, only under the FTCA." *Id.* at 1190.

*Cervantes* is distinguishable from the present case. Here, the property belonged to Plaintiff when it was seized, and it was a subject of criminal investigation. In addition, Plaintiff alleges that the damage occurred during the government's inventory and custody of the property, which resulted directly from the initial seizure pursuant to valid warrants and not from an unrelated event such as the auction in *Cervantes*. Thus, we find no "independent and intervening event" like the one at issue in *Cervantes*.

**[4]** In sum, under pre-CAFRA law, the government did not waive sovereign immunity with respect to Plaintiff's claim. We turn, then, to CAFRA, which post-dates *Kosak*, in order to determine whether it provides Plaintiff with an avenue for relief.

Although we must start our analysis with the text of the statute, *United States v. $493,850.00 in U.S. Currency*, No. 06-15225, 2008 WL 659574, *5-*7 (9th Cir. Mar. 13, 2008), the text provides only the slimmest insight into the scope of CAFRA's re-waiver of sovereign immunity. The first requirement for the re-waiver to apply is that "the property was seized for the purpose of forfeiture." 28 U.S.C. § 2680(c)(1). At the risk of parsing the text too closely, the statute's use of

the definite phrase "the purpose of forfeiture," as opposed to an indefinite phrase "a purpose of forfeiture," suggests that the property be seized *only* for the purpose of forfeiture. Had Congress drafted the text to provide for re-waiver "if the property was *seized and forfeited*," then it would apply when both purposes underlie a single seizure. Congress, however, did not do so. *Accord Dahler v. United States*, 473 F.3d 769, 772 (7th Cir. 2007) (per curiam) (citing the text of CAFRA and its amendments to § 2680(c) and commenting that "Congress intended the amendment to apply only to forfeitures—not every detention—of property"), *abrogated on other grounds by Ali*, 128 S. Ct. at 835 n.1.

The legislative history of CAFRA, to which we turn next, *$493,850.00*, 2008 WL 659574, at *7, provides no greater insight into congressional intent. In support of his argument, Plaintiff cites a Report of the House of Representatives concerning the bill. The Report states: "The bill amends the Federal Tort Claims Act to allow for tort claims against the United States government based on the destruction, injury, or loss of goods, merchandise, or other property while in the possession of any law enforcement officer *if the property had been seized for the purpose of forfeiture*." H.R. Rep. No. 192, 106th Cong., p. 18 (1999) (emphasis added). Rather than supporting Plaintiff's expansive reading of the statute, the emphasized text is materially identical to 28 U.S.C. § 2680(c)(1). In addition, although the Report introduces the discussion of the re-waiver of sovereign immunity by reiterating the detention of goods exception—i.e., that the government "is exempted from liability . . . for damage to property while detained by law enforcement officers," *id.*—the Report does not identify the scope of the re-waiver's application beyond the text emphasized above and a few examples of how "[s]eized property awaiting forfeiture can be quickly damaged," *id.* Thus, the Report neither detracts from nor alters our textual analysis.

**[5]** While the text and legislative history yield only marginal guidance, two of the three rationales identified by the Supreme Court in *Kosak* as underlying the exceptions to the waivers of sovereign immunity[3] provide robust support for limiting the application of the re-waiver in § 2680(c)(1)-(4). *Cf. Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 492 (2006) (instructing courts "to identify those circumstances which are within the words and the reason" of an FTCA exception when determining the scope of its application (internal quotation marks omitted)). First, law enforcement officers who seize property for law enforcement purposes often are operating in hostile or dangerous environments, whether or not they anticipate that, eventually, a forfeiture may result from their efforts. The case at hand is a perfect example: According to the applications and affidavits for the warrants, the ATF agents were investigating international firearms trafficking that involved the murder of Mexican soldiers and the execution of 18 civilians. Any waiver of sovereign immunity for damage to the property could hamper law enforcement officers' effectiveness in carrying out the important purposes underlying the seizure and redirect their attention from the possibility of danger in executing the search warrant to the possibility of civil damages.

**[6]** Second, as was true in *Kosak*, the scarcity of resources to inspect and protect the property means that law enforcement officers might be subject to false and fraudulent claims. Again, this case provides an example. Plaintiff alleges that the United States "destroyed the packaging for collectors['] ammunition." Law enforcement officers who are executing a

---

[3]Although *Kosak* pre-dates CAFRA, the Supreme Court relied on *Kosak* as recently as 2006. *See Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 487 (2006) (identifying *Kosak* as having "decisive weight" in supporting its conclusion). Consequently, *Kosak* remains good law. *Accord Ali v. Fed. Bureau of Prisons*, 128 S. Ct. 831, 834-35 (2008) (citing the Eleventh Circuit's reliance on the holding in *Kosak* and rejecting the petitioner's contention that *Kosak* addressed the question raised in *Ali*, but without revisiting the *Kosak* holding).

search warrant do not necessarily have the particularized knowledge that is required to protect from damage the "packaging for collectors['] ammunition." With limited resources, law enforcement agencies cannot be expected to employ an expert, such as a firearms historian, to catalogue and inspect property seized in connection with the execution of a search warrant. Accordingly, application of CAFRA's re-waiver of sovereign immunity would leave the government open to the false and fraudulent claims that *Kosak* described as one of the main reasons for the statutory exceptions to the FTCA's waiver of sovereign immunity.

The third *Kosak* rationale—the availability of another remedy—supports Plaintiff's argument for the broader application of CAFRA's re-waiver of sovereign immunity. But the Supreme Court characterized that rationale as applying "to a lesser extent." *Kosak*, 465 U.S. at 860. Thus, without more, it is not a sufficient ground to rule in Plaintiff's favor.

In addition, Plaintiff's interpretation of CAFRA would eviscerate the detention of goods exception. When the government seizes property for law enforcement purposes, in practice, forfeiture often follows eventually. Thus, in every criminal seizure the government necessarily must anticipate at least the possibility of a future forfeiture, a dual motivation that would be nearly impossible to disprove in any particular case. That pervasive dual motivation cannot defeat sovereign immunity under the FTCA; the Supreme Court has instructed that the FTCA "maintain[s] sovereign immunity for the entire universe of claims against law enforcement officers . . . 'arising in respect of' the 'detention' of property." *Ali*, 128 S. Ct. at 841.

**[7]** In short, the text of § 2680(c)(1)-(4), uncontradicted by its legislative history, provides some support for a narrow reading of the re-waiver of sovereign immunity in forfeiture actions. That narrow reading is consistent with the policy rationales identified by the Supreme Court as underlying the

detention of goods exception to the FTCA's waiver of sovereign immunity. We are mindful of the Supreme Court's instruction to use caution when interpreting the scope of an exception to the FTCA's waiver of sovereign immunity. *Dolan*, 546 U.S. at 492. Here, though, we must do just the opposite: We interpret not an exception to the FTCA's waiver of sovereign immunity, but instead interpret an exception to the exception. That is, our task is to interpret a waiver of sovereign immunity. As a result, we ultimately must apply the general rule that waivers of sovereign immunity are construed in favor of the sovereign and must interpret any remaining ambiguity in the scope of CAFRA's re-waiver of sovereign immunity in favor of the United States. Consequently, we hold that the re-waiver of sovereign immunity in 28 U.S.C. § 2680(c)(1)-(4) applies only to property seized solely for the purpose of forfeiture, even if the government had in mind, and later pursued, judicial forfeiture of property seized initially for a legitimate criminal investigative purpose. The district court correctly concluded that it lacked jurisdiction over Plaintiff's claim.

AFFIRMED.