CLD-087                                                                     NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3678
_____

SPENCER BOWENS,
Appellant

v.

UNITED STATES DEPARTMENT OF JUSTICE,
FEDERAL BUREAU OF PRISONS; OFFICER (FNU) JENKINS,
Unit 3B Officer; WARDEN JOHNATHAN C. MINER; D. SCOTT DODRILL,
Northeast Regional Director; HARRELL WATTS, National Inmate Appeals
Administrator; OFFICER (FNU) STANLEY, Unit 3B Officer

_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 3-08-cv-00590)
District Judges:  Honorable Thomas Vanaskie and
Honorable Richard Conaboy

_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
January 13, 2011

Before:  RENDELL, FUENTES and SMITH, Circuit Judges

(Opinion filed: January 26, 2011)
_____

OPINION OF THE COURT
_____

PER CURIAM

        Spencer Bowens appeals from a series of decisions finding in favor of the

defendants and denying his request to amend his complaint. For the following reasons, we will summarily affirm the judgment of the District Court.

## I. Factual and Procedural Background

The present case arises out of an incident from January 16, 2006, when Bowens— a federal prisoner then housed at USP Allenwood—gave defendant Correctional Officer Brian Stanley ("Stanley") an unsealed envelope to be placed into the prison mail system.[1] The envelope contained a greeting card purchased from the prison commissary and twenty-two photographs depicting "[Bowens's] childhood, many deceased family members and friends, and life experiences with celebrities" that Bowens planned to use "to create a documentary about [his] upbringing." Bowens Aff. ¶ 2. As Bowens was concerned that the photographs could fall out of the envelope if it was deposited in the regular mail-drop box, he asked Stanley to place it in the unit office of the morning-watch officer for sealing and eventual delivery.[2] Stanley complied. See Stanley Decl. ¶¶ 10–

---

[1] With certain exceptions, "outgoing mail from a sentenced inmate in a medium or high security level institution . . . may not be sealed by the inmate and may be read and inspected by staff." 28 C.F.R. § 540.14(c)(2). USP Allenwood is a high-security institution.

[2] Stanley describes the mailing process at USP Allenwood as follows: "Inmates assigned to [Bowens's] housing unit are allowed to place outgoing mail inside a mail box located within the housing unit. The mail is then picked up by the morning watch officer who conducts an initial screening to determine if the mail conforms with the Bureau[ of Prisons'] policies. If it does conform, the mail is forwarded to the institution's Mail Room for mailing. If the mail appears to violate Bureau policy, it is forwarded to the

2

12. Defendant Myles Jenkins ("Jenkins") was the assigned morning-watch officer, whose duties included conducting an initial screening of inmate mail. See Jenkins Decl. ¶ 8. Jenkins inspected Bowens's letter, and was concerned that the photographs, which appeared to be Polaroids, were prohibited by prison regulations, because Polaroid photographs can be used to hide contraband. See Jenkins Decl. ¶¶ 9–11; Bureau of Prisons ("BOP") Program Statement 5580.07, at 6 (2005), *available at* http://www.bop.gov/policy/progstat/5580_007.pdf. Jenkins therefore forwarded Bowens's letter to Allenwood's Special Investigative Staff ("SIS") department for further inspection. Jenkins Decl. ¶ 13.

Shortly thereafter, Bowens was informed by the intended recipient of the letter that it had arrived unsealed and empty. He spoke to several prison officials, none of whom could identify the location of the photographs and whose stories were inconsistent; for example, a screening officer at the SIS claimed to have not received any mail from Jenkins on the day in question. See Bowens Aff. ¶ 12. Moreover, Bowens was not provided with a confiscation form addressing the seizure or disposal of his property, which should have issued per BOP policy. See BOP Program Statement 5580.07, at 12–13.

The following month, Bowens commenced his administrative grievance process.

---

institution's Special Investigative Staff for further inspection and processing." Stanley Decl. ¶ 8.

During an appeal, he was told that the photos "were deemed unsuitable for USP Allenwood and were not returned," and that staff "properly exercised discretion in not returning the photographs." Surreply Ex. 3B. His administrative grievance was ultimately denied on August 2, 2006. Bowens also filed a "Claim for Damage, Injury, or Death," which was similarly denied on October 19, 2007, the reviewer noting that "[t]he photographs were disposed of as contraband properly" and that "[f]urther investigation reveals that there is insufficient evidence to support [the] claim that a confiscation form was not provided." Surreply Ex. 5B.

Proceeding *pro se*, Bowens filed the instant lawsuit on March 27, 2008, asserting claims under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), and the Federal Tort Claims Act ("FTCA"). He named as defendants Officers Jenkins and Stanley, Warden Jonathan C. Miner, National Inmate Appeals Administrator Harrell Watts, Regional Director D. Scott Dodrill, and the BOP. Bowens accused the defendants of violating his rights under the First and Fifth Amendments "when they confiscated his photographs in contravention of FBOP rules," and alternatively charged the same defendants with negligence in their handling of his property. Compl. 5–6. Bowens sought both injunctive and monetary relief.

The defendants moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), arguing that the District Court lacked subject-matter jurisdiction over the FTCA claim and that Bowens had failed to articulate a violation of his constitutional rights. The

4

District Court granted the motion with regard to Bowens's FTCA and due-process claims, but allowed his First Amendment claim to proceed to discovery. See Bowens v. United States Department of Justice, No. 3:CV-08-590, 2009 U.S. Dist. LEXIS 84922, at *13 (M.D. Pa. Sept. 17, 2009). Bowens then moved to amend his complaint to add several SIS defendants; the motion was denied. Discovery concluded, the defendants moved for summary judgment, which was granted. This timely appeal follows.

## II. Standard of Review

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. We conduct plenary review of dismissals under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), as well as of grants of summary judgment. County Concrete Corp. v. Twp. Of Roxbury, 442 F.3d 159, 163 (3d Cir. 2006); SEC v. Infinity Group Co., 212 F.3d 180, 186 n.6 (3d Cir. 2000). In analyzing a motion to dismiss, we are bound to accept as true all well-pleaded allegations in the complaint, drawing all reasonable inferences in the plaintiff's favor. Capogrosso v. Supreme Court of N.J., 588 F.3d 180, 184 (3d Cir. 2009). When reviewing an order granting summary judgment, we use "the same standard as the district court; i.e., whether there are any genuine issues of material fact such that a reasonable jury could return a verdict for the plaintiffs" while "draw[ing] inferences in a light most favorable to the non-moving party." Debiec v. Cabot Corp., 352 F.3d 117, 128 n.3 (3d Cir. 2003) (citations omitted).

Our review of a denial of leave to amend a complaint is for abuse of discretion by

5

the District Court.  See Kanter v. Barella, 489 F.3d 170, 175 (3d Cir. 2007).

We may summarily affirm the District Court's decision if the appeal does not present a substantial question.  See LAR 27.4; I.O.P. 10.6; United States v. Baptiste, 223 F.3d 188, 190 n.3 (3d Cir. 2000); Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999).  We may affirm on any ground "so long as the record supports the judgment." Johnson v. Orr, 776 F.2d 75, 83 n.7 (3d Cir. 1985).

## III. Analysis

### A) Federal Tort Claims Act

Bowens argues that the "United States is liable for the personal property lost [*sic*] caused by the neglient [*sic*] actions of government employees who acted within the scope of their office or employment at the FBOP."  Compl. 5.  The FTCA grants jurisdiction to the district courts, and waives federal sovereign immunity over, "claims against the United States, for money damages . . . for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  The District Court held that it lacked subject-matter jurisdiction to consider the FTCA claim, agreeing with the defendants that 28 U.S.C § 2680(c) proscribes the waiver of federal sovereign immunity in relation to "[a]ny claim arising in respect . . . [to] the detention of any goods,

6

merchandise, or other property by any officer of customs or excise or any other law enforcement officer." 28 U.S.C. § 2680(c). It therefore dismissed the claim under Fed. R. Civ. P. 12(b)(1).

We agree with the District Court's analysis and conclusion. The Supreme Court has emphasized that the phrasing in § 2680(c) is not intended to limit the waiver exclusion to the excise context; rather, the exception to the general waiver of sovereign immunity "sweeps as broadly as its language suggests." Ali v. Fed. Bureau of Prisons, 552 U.S. 214, 226 (2008). In Ali, the Court held that a suit over the loss of items of "religious and nostalgic significance" during a prison transfer was barred by § 2680(c). Id. at 216, 228. The same rationale applies to the loss of items pursuant to detention in Bowens's case. Nor can Bowens seek relief in the "exception to the exception" found in § 2680(c)(1–4), as that subsection applies only to "property seized *solely* for the purpose of forfeiture." Foster v. United States, 522 F.3d 1071, 1075 (9th Cir. 2008) (emphasis added). There is no indication here that the detention of Bowens's correspondence was so motivated; instead, the record suggests a screening purpose under prison guidelines. Lastly, we are unconvinced by Bowens's argument that there was no "detention" because the facility did not follow regulations in issuing him the proper form.

B) Due Process Under the Fifth Amendment

Bowens alleges via Bivens that the confiscation of his photographs amounted to a deprivation of property without due process of law. See U.S Const. amend. V. The

District Court dismissed the claim because Bowens had an adequate post-deprivation remedy. We agree. Under Hudson v. Palmer, 468 U.S. 517 (1984), and its progeny, deprivation of property by a government employee does not violate due process so long as an adequate post-deprivation system is in place. See id. at 533; Monroe v. Beard, 536 F.3d 198, 210 (3d Cir. 2008). The BOP's Administrative Remedy Program, of which Bowens availed himself, qualifies as such an adequate system.

C) First Amendment

Bowens's final substantive allegation is that the defendants' actions violated his right to free speech under the First Amendment. See Procunier v. Martinez, 416 U.S. 396, 413 (1974); Todaro v. Bowman, 872 F.2d 43, 49 (3d Cir. 1989). The District Court granted summary judgment in favor of the defendants based on sovereign immunity, failure to demonstrate personal involvement,[3] and its conclusion that the sole personally involved defendant, Jenkins, did not act in an unconstitutional manner, as "[t]he undisputed facts establish that Defendant Jenkins acted in a reasonable manner and his actions were undertaken in accordance with existing BOP policies[;] [t]here is simply no indication that Jenkins participated in the decision to label Plaintiff's photos as being contraband, engaged in any intentional effort to restrict Bowens' freedom of speech, or otherwise acted in an unconstitutional manner." Bowens v. United States Department of

---

[3] Bowens conceded that Stanley's request for dismissal should be granted. See Pl.'s Resp. 18.

Justice, No. 3:CV-08-590, slip op. at 18–19 (M.D. Pa. Aug. 23, 2010).

We agree with the District Court concerning the defendants other than Jenkins. To the extent that Bowens attempted to maintain a claim against them in their official capacities, those claims are barred by sovereign immunity. See Daly-Murphy v. Winston, 837 F.2d 348, 355 (9th Cir. 1987); Chinchello v. Fenton, 805 F.2d 126 n.4 (3d Cir. 1986); cf. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."). Nor could Bowens properly sue the BOP, as a prisoner "may not bring a Bivens claim against . . . the United States or the BOP . . . [as w]ith respect to the alleged constitutional deprivation, his only remedy lies against the individual." Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 71 (2001). Lastly, it is axiomatic that the defendants "in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Defendants Dodrill, Miner, and Watts were solely involved in the denial of Bowens's grievances, and had no part in any underlying constitutional violation—and Bowens admits that Stanley was not personally involved. Thus, these defendants were properly dismissed.

That leaves Jenkins as the only remaining defendant, and while there are disputed issues of fact—such as whether the photographs in question were Polaroids—none is material to whether Jenkins committed a constitutional violation. DeHart v. Horn, 390

9

F.3d 262, 267 (3d Cir. 2004) (only disputes over material facts are relevant to summary judgment). The record clearly shows that while Jenkins performed the initial screening of Bowens's mail, he forwarded the material to SIS for further "clarification of [its] suitability." See Surreply Ex. 2B, 3B; Stanley Decl. ¶ 8; Jenkins Decl. ¶ 8. In his affidavit, Bowens protests this conclusion, observing that various SIS employees claimed to not have received material from Jenkins. See Bowens Aff. ¶¶ 8, 11–13. Yet a careful reading of these statements demonstrates no inconsistency. Jenkins "gave [the photographs] to SIS for investigation," but did not give them to any particular staff-member; thus, the statements by Officers Eder, Hicks, Hughes, and Lurman that they did not receive any mail concerning Bowens does not entail that Jenkins failed to deliver the letter, merely that its contents went missing sometime after delivery. See Bowens Aff. ¶¶ 11–13. There is no material evidence in the record that Jenkins tampered with Bowens's mail, or otherwise acted in an unconstitutional fashion.[4] While we share the District Court's concern regarding the prison's conduct in this case—and especially its failure to provide Bowens with any information as to the location of his photographs and the reasoning behind their confiscation and destruction—we cannot conclude that the part

---

[4] In his affidavit, Bowens hints at a potential discriminatory motive, observing that some of the pictures were of "scantily clad white women . . . which Jenkins evidently did not approve of." Bowens Aff. ¶ 10. Bowens fails to provide a basis of knowledge for this statement, and it is therefore unsuitable for consideration upon summary judgment. See Fed. R. Civ. P. 56(c)(4); SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133, 138 (2d Cir. 2009).

played by Jenkins amounted to a constitutional violation under the First Amendment.

D) Leave to Amend Complaint

The District Court did not abuse its discretion in denying Bowens's leave to amend his complaint to add the SIS defendants. The incident occurred in January 2006, and Bowens was made quickly aware of the SIS's involvement in the prison mail system. However, Bowens did not move to add additional SIS parties until February 16, 2010. In refusing to allow the amendment, the District Court identified factors including Bowens's knowledge of SIS's involvement and the passage of time since his initiation of the suit. We cannot conclude that this was an abuse of discretion. See Foman v. Davis, 371 U.S. 178, 182 (1962).

## V. Conclusion

For the foregoing reasons, we will affirm the order of the District Court.

11