**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 22-1304**

———————

REBA MYERS; DAVID EDWARD MYERS,

Plaintiffs - Appellants,

v.

ALEJANDRO N. MAYORKAS, Secretary Department of Homeland Security; UNITED STATES OF AMERICA,

Defendants - Appellees.

———————

Appeal from the United States District Court for the Western District of Virginia, at Harrisonburg.  Elizabeth Kay Dillon, District Judge.  (5:20-cv-00068-EKD)

———————

Argued:  January 24, 2023                                    Decided:  May 3, 2023

———————

Before NIEMEYER and QUATTLEBAUM, Circuit Judges, and FLOYD, Senior Circuit Judge.

———————

Affirmed by published opinion.  Judge Niemeyer wrote the opinion, in which Judge Quattlebaum and Senior Judge Floyd joined.

———————

**ARGUED:**  Shane Nathaniel Waller, WALLER DEFENSE, PLLC, Strasburg, Virginia, for Appellants.  Laura Taylor, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellees. **ON BRIEF:**  Christopher R. Kavanaugh, United States Attorney, Krista Consiglio Frith, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellees.

———————

NIEMEYER, Circuit Judge:

The plaintiffs Reba and David Myers, residents of West Virginia, formerly owned Demcorp, LLC, which did business as "Dollar Stretcher," a convenience store in nearby Winchester, Virginia. That store sold large quantities of cigarettes, which law enforcement agents of the Department of Homeland Security had evidence to believe were being resold in New York to avoid New York's higher excise taxes, in violation of the Contraband Cigarette Trafficking Act.[*] The law enforcement agents had information that Reba Myers and Dollar Stretcher were knowingly part of a conspiracy to violate that statute. During their criminal investigation, the agents, armed with warrants, seized 1,560 cartons of cigarettes (15,600 packs with 20 cigarettes in each pack) from the Dollar Stretcher store, and the Department of Homeland Security then held them for several years, during which time the cigarettes passed their shelf life of one year. When the Department ultimately offered to return the cigarettes, Reba refused them as they could no longer be sold and thus had no value.

The Myerses commenced this action against the Department of Homeland Security and the United States under the Federal Tort Claims Act, seeking compensatory damages for the loss of the value of the seized cigarettes, which they contend was approximately

---

[*] The Contraband Cigarette Trafficking Act prohibits the knowing sale, purchase, or transport of "contraband cigarettes," 18 U.S.C. § 2342(a), defined to mean "a quantity in excess of 10,000 cigarettes, which bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found, if the State or local government requires a stamp, impression, or other indication to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes," *id*. § 2341(2).

$100,000. On the United States' motion, the district court dismissed the Myerses' complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. The court concluded that the United States was entitled to sovereign immunity pursuant to the "detention of goods" exception to the waiver of immunity provided by the Federal Tort Claims Act. *See* 28 U.S.C. § 2680(c).

The Myerses contend that the district court erred in failing to allow their claim to proceed against the United States under an exemption from the "detention of goods" exception — a "re-waiver" of immunity — which is afforded when "the property was seized *for the purpose of forfeiture*." 28 U.S.C. § 2680(c)(1) (emphasis added). They note that even though one warrant authorizing the seizure of their property was issued under Federal Rule of Criminal Procedure 41(c) to obtain evidence of a crime, another warrant was issued on the same day authorizing the seizure of property for the purpose of civil forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C). Consequently, they argue, the "re-waiver" of immunity for claims related to property seized for the purpose of forfeiture applies, and therefore they are entitled to pursue their action against the United States.

In circumstances where a seizure of property was effected for both the "purpose of forfeiture" and the purpose of criminal investigation, courts of appeals have concluded that the United States is still immune, construing the re-waiver provision to apply only if the property was seized *solely* for the purpose of forfeiture. *See, e.g.*, *Foster v. United States*, 522 F.3d 1071, 1075 (9th Cir. 2008); *Smoke Shop, LLC v. United States*, 761 F.3d 779, 784 (7th Cir. 2014). While we have not heretofore construed the re-waiver provision, we do so now and follow our sister circuits. Thus, we affirm.

3

I

A multi-jurisdictional taskforce led by law enforcement agents of the Department of Homeland Security was tasked with investigating the trafficking of contraband cigarettes, particularly between Virginia and New York. The agents learned that large quantities of cigarettes, taxed in Virginia at $3.00 per carton, were being purchased by individuals and groups in Virginia and then transported to New York and sold there, where the tax per carton was $58.50, in violation of the Contraband Cigarette Trafficking Act, 18 U.S.C. § 2342. The traffickers, or "smugglers" as they were often called, were thus able to make a profit of over $55 per carton based simply on the differential in taxes.

In 2015, Reba Myers and Dollar Stretcher were targeted after agents received information indicating that Reba was involved in such illegal cigarette trafficking. An informant revealed to agents that he had purchased approximately 3,400 cartons over a period of time from Reba and sold them in New York, thus avoiding the high New York taxes and yielding handsome profits. He explained how Reba routinely helped him package the cartons in large garbage bags; how they discussed the fact that other "smugglers" were getting busted by the police; and how the informant had, on at least one occasion, brought Reba specialty food items from New York, at her request.

With probable cause that Reba and Dollar Stretcher were engaged in a conspiracy to violate the Contraband Cigarette Trafficking Act, the agents went to the district court in the Western District of Virginia, where the Dollar Stretcher store was located, and obtained a search and seizure warrant under Federal Rule of Criminal Procedure 41(c). The court

issued the warrant at 11:45 a.m. on August 17, 2015, authorizing agents to seize "*evidence of a crime*; contraband, fruits of crime, or other items illegally possessed; [or] property designed for use, *intended for use, or used in committing a crime*." (Emphasis added). Specifically, the warrant authorized the agents to search the Dollar Stretcher store and seize a lengthy list of property, including "[c]igarette related packaging items (including but not limited to boxes, cartons, tax stamps)." The warrant was executed the next day, August 18, 2015, and the agents seized, among many other items, 1,560 cartons of cigarettes.

After obtaining the Rule 41(c) criminal search and seizure warrant, the agents then went to the district court in the Northern District of West Virginia, where the Myerses resided, and obtained a civil seizure warrant "to seize properties that are subject to forfeiture," under 18 U.S.C. § 981(a)(1)(C). The court issued that warrant at 4:26 p.m. on August 17, 2015, and it specifically authorized agents to seize "[a]ll cigarette inventory" of the Dollar Stretcher store. This warrant was executed simultaneously with the Rule 41(c) criminal warrant on August 18, again with the seizure of the 1,560 cartons of cigarettes.

In April 2017, Reba pleaded guilty to felony tax evasion and was sentenced to one year and one day's imprisonment. She also lost her license to sell cigarettes, and the Dollar Stretcher store closed.

On October 3, 2017, Reba and others (but not her husband David Myers) were indicted for conspiring to evade tobacco taxes, in violation of 18 U.S.C. § 371, and violating the Contraband Cigarette Trafficking Act, in violation of 18 U.S.C. §§ 2342(a) and 2344(a). During the trial on that indictment, the district court declared a mistrial and

5

dismissed the indictment with prejudice.  Thereafter, when the government attempted to return the cigarettes to Reba, Reba refused them as their shelf life had expired and they no longer had any value.  After exhausting her administrative remedies, Reba, together with her husband David, commenced this action against the United States for the fair market value of the cigarettes that had been seized and detained.

The district court dismissed the Myerses' complaint for lack of subject matter jurisdiction, concluding that the United States had not waived sovereign immunity in a circumstance in which property was seized and detained by *both* a criminal search and seizure warrant and a civil forfeiture warrant, even though the United States had waived sovereign immunity if the seizure and detention had been *solely* for the purpose of forfeiture.  This appeal followed.

II

The district court, after concluding that the cigarettes were "seized for the dual purpose of forfeiture and evidence," applied the "sole purpose" test from *Foster*, 522 F.3d at 1075, under which "the United States retains sovereign immunity unless the detained goods were seized for the *sole* purpose of forfeiture."  (Emphasis added).  The court also gave as support several other cases that had followed *Foster*'s "sole purpose" test.  *See Smoke Shop*, 761 F.3d at 784; *Shigemura v. United States*, 504 F. App'x 678, 680 (10th Cir. 2012); *Starr Indem. & Liab. Co. v. United States*, No. 18-cv-3326, 2019 WL 4305529, at *3–4 (D. Md. Sept. 11, 2019).  Accordingly, the court dismissed the complaint.

The Myerses argue that this circuit has not yet adopted the "sole purpose" test and that the particular circumstances for applying the test do not exist here. They explain that in *Foster*, the property was seized *initially* for a criminal investigative purpose under Rule 41 and not for the purpose of civil forfeiture, and only later did the government seize the property for the purpose of forfeiture. They also note that similar circumstances were present in *Starr*, where the property was initially seized for a criminal investigative purpose. But in this case, they argue, their "cigarette inventory was initially seized for the purpose of forfeiture as an innocent substitute asset, pursuant to a warrant for civil forfeiture. The initial property seizure was not for evidentiary purposes pursuant to a Rule 41 search warrant, as was in the case in *Foster* or *Starr Indem*." They maintain accordingly that because the inventory was initially seized for the purpose of a civil forfeiture, their action should be allowed to proceed under the re-waiver provision of the Federal Tort Claims Act, 28 U.S.C. § 2680(c)(1) (re-waiving sovereign immunity with respect to a claim based on the loss of property seized for civil forfeiture in certain circumstances).

To address their argument, we turn first to the relevant statutory provisions governing the United States' waiver of sovereign immunity.

With the enactment of the Federal Tort Claims Act in 1946, the United States waived sovereign immunity generally for tort actions. *See Levin v. United States*, 568 U.S. 503, 506 (2013) (noting that the Act "was designed primarily to remove the sovereign immunity of the United States from suits in tort" (quoting *Richards v. United States*, 369 U.S. 1, 6 (1962))). The Act provides in particular that the United States shall be liable, to the same extent as a private party, "for injury or loss of property, or personal injury or death

7

caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1); *see also* 28 U.S.C. § 2674. Despite this generally framed waiver, however, the Act provides some specific exceptions, and the one that is relevant here preserves the United States' sovereign immunity with respect to "[a]ny claim arising in respect of . . . the *detention of any goods*, merchandise, or other property by any officer of customs or excise or any other law enforcement officer." 28 U.S.C. § 2680(c) (emphasis added). This "detention of goods" exception to the waiver applies to claims "resulting from negligent handling or storage of detained property." *Kosak v. United States*, 465 U.S. 848, 854 (1984).

But with the subsequent enactment of the Civil Asset Forfeiture Reform Act of 2000, Pub. L. No. 106-185, 114 Stat. 202, Congress carved out an exception to § 2680(c)'s preservation of the United States' sovereign immunity from suits related to the detention of goods. That Act added a proviso to § 2680(c) stating that the waiver of sovereign immunity in § 1346(b) *continues* to "apply to any claim based on injury or loss of goods, merchandise, or other property, while in the possession of any officer of customs or excise or any other law enforcement officer," if a number of conditions are met, including that:

> the property was *seized for the purpose of forfeiture* under any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense[.]

28 U.S.C. § 2680(c)(1) (emphasis added). In short, the Civil Asset Forfeiture Reform Act "canceled the detention of goods exception and restored the waiver of sovereign immunity — or 're-waived' sovereign immunity — with respect to certain forfeiture-related

8

seizures." *Foster*, 522 F.3d at 1075; *see also Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 222 (2008).

In this case, the government first obtained a criminal search and seizure warrant based on probable cause that Dollar Stretcher was engaged in a conspiracy to violate the Contraband Cigarette Trafficking Act, a criminal offense. The warrant authorized the seizure of "[c]igarette related packaging items (including but not limited to boxes, cartons, tax stamps)" as "evidence of [the] crime" and as "property . . . intended for use . . . in committing [the] crime." Pursuant to the warrant, the government agents seized 1,560 cartons of cigarettes at the Dollar Stretcher store, which they then detained pending trial on criminal charges.

Later on the same day that the agents obtained the criminal warrant, they also obtained a civil warrant for the seizure of property for forfeiture, *i.e.*, "[a]ll cigarette inventory" at the Dollar Stretcher store. And they executed that warrant simultaneously with the criminal warrant, seizing the same 1,560 cartons of cigarettes.

Thus, the 1,560 cartons of cigarettes were seized simultaneously under two warrants, one for evidence for a criminal prosecution and one for civil forfeiture. Of course, as to property detained for a criminal investigative purpose, the United States is immune from suit under § 2680(c). But as to property seized for civil forfeiture, the United States has waived its immunity under § 2680(c)(1). What the Federal Tort Claims Act does not specifically address, however, is whether the United States is immune from suit when the same property is seized pursuant to two warrants issued for different purposes.

9

Nonetheless, we conclude that so long as the property is seized and detained for a criminal investigative purpose, for which the United States did not waive its sovereign immunity, we are not free to override that immunity even if the property was also seized for a purpose as to which immunity is waived. And for that reason, we agree with the decision in *Foster* that the re-waiver provision in § 2680(c)(1), which applies when property is seized for the purpose of forfeiture, can apply only when the property is seized *solely* for the purpose of forfeiture. 522 F.3d at 1075; *see also Smoke Shop*, 761 F.3d at 784.

The Myerses seek to distinguish *Foster* and *Smoke Shop* by noting that in *Foster*, the initial seizure of property was pursuant to a criminal warrant, and it was not until over nine months later that the government first indicated that the property was seized for civil forfeiture. 522 F.3d at 1073. Similarly, in *Smoke Shop*, the property was seized by consent so that the DEA could investigate whether certain incense products contained illegal controlled substances, and it was not until *after* the initial seizure that the products were scheduled as controlled substances, thereby rendering the property forfeitable. 761 F.3d at 781. The sequence in those cases was different from the simultaneous seizure that occurred in this case. Nonetheless, we conclude that that distinguishing fact is not material to the reasoning in and holding of both *Foster* and *Smoke Shop*. In *Foster*, the court held that "the fact that the government may have had the possibility of a forfeiture in mind when it seized Plaintiff's property" is insufficient if "criminal investigation was [also] a legitimate purpose of the initial seizure." 522 F.3d at 1075. The court reasoned that this construction gave effect to one of the main congressional objectives in creating exceptions to the Federal

10

Tort Claims Act — as recognized by the Supreme Court in *Kosak* — of "ensuring that certain governmental activities not be disrupted by the threat of damage suits." *Id*. at 1076 (cleaned up) (quoting *Kosak*, 465 U.S. at 858). A waiver of sovereign immunity for damage to property seized in connection with a criminal investigation "could hamper law enforcement officers' effectiveness" by "redirect[ing] their attention" away from the investigation and "to the possibility of civil damages." *Id*. at 1078. The court also found support for its conclusion in the text of § 2680(c)(1), reasoning that "the statute's use of the definite phrase 'the purpose of forfeiture,' as opposed to an indefinite phrase 'a purpose of forfeiture,' suggest[ed] that the property be seized *only* for the purpose of forfeiture." *Id*. at 1077. And in *Smoke Shop*, the Seventh Circuit followed *Foster*. 761 F.3d at 784.

We find the *Foster* court's reasoning persuasive. In this case, the government was engaged in a large criminal investigation involving not only Reba's store but also other stores in Virginia that participated in smugglers' efforts to purchase cigarettes in Virginia and resell them in New York to avoid the higher excise taxes in New York. If suits challenging seizures of property made in furtherance of this criminal investigation were permitted, even though the seizures were also made for purposes of forfeiture, the suits would interfere with the criminal investigation, a result that Congress specifically sought to avoid with the "detention of goods" exception to its waiver of immunity. Allowing such suits would effectively override the immunity of the United States specifically preserved for the seizure and detention of property accomplished to further criminal investigations. While it is true that Congress did intend to allow suits challenging seizures of property for civil forfeiture, in doing so, it did not modify the United States' continuing immunity for

11

the seizure and detention of property in furtherance of criminal investigations. Accordingly, when both purposes are in play, we must yield to the immunity that the United States has not waived.

To avoid this obvious problem, the Myerses argue that the same property was not covered by the two warrants in this case. They note that the criminal warrant authorized the seizure of cigarette packaging, tax stamps, boxes, and cartons, but did not specifically authorize the seizure of the cigarettes themselves, whereas the civil warrant authorized the seizure of all cigarette inventory. Accordingly, they maintain that because it was the cigarettes themselves that were destroyed and therefore became the subject of suit, this case does not involve a dual purpose seizure. The distinction they make, however, is one without a difference. The seizure of the packaging, boxes, and cartons in which the cigarettes were contained and onto which the stamps were affixed could not be effected without seizing the cigarettes that are sealed inside the packaging because removing the cigarettes would destroy the packaging. The cigarettes were a necessary incident to seizing the packaging — when an agent seizes the cigarettes, he seizes the packaging, and when the agent seizes the packaging, he seizes the cigarettes. A reasonable agent would not do otherwise.

Moreover, the Myerses' argument defies common sense. If the warrant had ordered the seizure of all jars of Skippy brand peanut butter, their argument would require that agents remove the peanut butter from the jars before seizing them. Or more analogously, if the warrant had ordered the seizure of all packaging and labeling for Stilton cheese, their argument would require that agents remove the cheese from the shrink-wrapped packaging

12

before seizing it, even though the process would destroy the packaging. Surely the Myerses do not reasonably maintain as much. Any commonsense reading of the warrant in this case, which directed the agents to seize cigarette packaging, boxes, tax stamps, and cartons, would also direct the agents to seize the cigarettes in them, and that is precisely what the agents did in response to the criminal warrant, reporting in their return on that warrant that they seized 1,560 cartons of cigarettes.

Finally, the Myerses argue that the criminal warrant served at most a secondary purpose and that the primary purpose of the seizure was for forfeiture because the cigarettes lacked evidentiary value in the criminal investigation. The cigarettes seized, they claim, were not contraband or evidence of a crime because they were seized *in Virginia* and had the required Virginia tax stamps. They argue, therefore, that the only valid purpose of the seizure could have been for the cigarettes to serve as substitute assets, *see* 21 U.S.C. § 853(p), which was being pursued by means of civil forfeiture such that their claim is covered by the re-waiver in 28 U.S.C. § 2680(c)(1).

The assertion that the cigarettes seized were not contraband, however, does little to advance the Myerses' argument. While the cigarettes may not have been contraband at the precise time they were seized on the reasoning that they would have become contraband only when they were found in New York, they nonetheless were the very cigarettes that likely would have become contraband, based on the information that the agents had and shared with the court in obtaining the criminal warrant. The cigarettes in the Dollar Stretcher store were thus property "*intended for use*" in furtherance of a conspiracy to violate the Contraband Cigarette Trafficking Act, an authorized criminal investigative

13

purpose of Rule 41(c)(3) (authorizing a criminal search and seizure warrant for "property designed for use, intended for use, or used in committing a crime").

*　　*　　*

In connection with its large *criminal* investigation of illegal cigarette trafficking by persons purchasing cigarettes from businesses in Virginia for transport to New York to avoid taxes, the government served warrants on persons and businesses in Virginia to seize cigarettes intended for use in the conspiracy. This included a criminal and a civil warrant executed at the Dollar Stretcher store, pursuant to which agents seized 1,560 cartons of cigarettes. The criminal warrant served a range of obvious and stated criminal investigative purposes, such as to collect evidence of the crimes, to seize property intended for use in the crimes, or to give effect to criminal forfeiture. Any damages action against the United States for the improper seizure and detention under such a warrant is barred by sovereign immunity. The Myerses' effort to hold the United States liable because the seizure was also made under a separate warrant for the purpose of civil forfeiture is not a statutory basis for overriding the United States' immunity. Thus, even though the seizure of the cigarettes in this case was authorized by both a warrant issued for criminal investigative purposes and a warrant issued for civil forfeiture — dual purposes — we conclude that the United States is immune from suit. Of course, if the seizure and detention had been effected for the *sole* purpose of civil forfeiture, the suit would fall under the re-waiver provision in § 2680(c)(1), and a suit challenging the seizure could go forward.

The judgment of the district court dismissing this case for lack of jurisdiction is accordingly

14

15

AFFIRMED.