In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-2895

ON-SITE SCREENING, INC. & RONALD L. LEALOS,

*Plaintiffs-Appellants*,

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09-C-06084—**Joan B. Gottschall**, *Judge*.

ARGUED MAY 22, 2012—DECIDED JULY 25, 2012

Before EASTERBROOK, *Chief Judge*, and WILLIAMS and TINDER, *Circuit Judges*.

TINDER, *Circuit Judge.* Ronald Lealos, through his company On-Site Screening, Inc. (On-Site), sought to develop a rapid, self-administered test to determine a person's HIV status. The development process included the collection of human blood and saliva samples. On-Site sued the United States under the Federal Tort Claims Act (FTCA) for the destruction of its blood and saliva

specimens by the Food and Drug Administration (FDA).[1] The district court found on summary judgment that the plaintiffs failed to contest the government's evidence that the suit arose from a law enforcement officer's detention of property excepting the claims from the FTCA's waiver of sovereign immunity. *See* 28 U.S.C. § 2680(c). This appeal followed.

## I.  Factual Background

We review the grant of summary judgment de novo construing all relevant facts in the appellants' favor. *MMG Fin. Corp. v. Midwest Amusements Park, LLC*, 630 F.3d 651, 656 (7th Cir. 2011). On-Site must point to facts showing a genuine issue for trial to win reversal. *Id.* Normally we review a district court's enforcement of its local rules for an abuse of discretion, *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 360 (7th Cir. 2009), but the appellants do not contest the finding that they failed to follow local rules.

The government's investigation of On-Site started in October 2004 when a local fire inspector informed the FDA that materials labeled HIV-positive were in a Bedford Park laboratory that made over-the-counter products like shampoos and deodorants. Jocelyn Ellis, a special agent in the FDA's office of criminal investigations, began investigating. After receiving written con-

---

[1]  Lealos is also a plaintiff but we will generally just refer to On-Site for simplicity's sake.

sent from the facility's owner, she found and removed blood and saliva specimens labeled HIV-positive from a refrigerator at the facility. Ellis deemed the specimens evidence in her investigation and placed them in storage in an Illinois Department of Public Health laboratory freezer. Ellis closed her investigation about four years later with the U.S. Attorney's Office declining to prosecute On-Site or its owner appellant Ronald Lealos and the FDA's Chicago district office declining to pursue a civil regulatory action. With Ellis's investigation over, the FDA contacted Lealos to see whether he wanted On-Site's specimens returned or destroyed. Lealos said he wanted the specimens back. Yet sometime before this the freezer in which the specimens were stored stopped operating causing the destruction of the blood and saliva specimens.

On-Site sued the United States under the FTCA alleging bailment, negligence, and breach of internal agency rules and protocols requiring the agency to maintain evidence in the condition in which it was discovered. The United States moved to dismiss on grounds that an exception to the FTCA's waiver of sovereign immunity—28 U.S.C. § 2680(c), excepting "any claim arising in respect of the . . . detention of . . . property by" law enforcement officers—applied to On-Site's claims. The district court found that the complaint's facts established a detention but allowed discovery to determine whether the specimens were detained by a "law enforcement officer" and whether an exception to the exception applied for property "seized for the purpose of forfeiture." *Id.* § 2680(c)(1); *On-Site Screening, Inc. v. United States*, No. 09 C 6084, 2010

WL 3025039, at *3-4 (N.D. Ill. July 30, 2010). On-Site deposed Ellis and the government produced about 2,000 pages of documents. On-Site moved to file an amended complaint and the government moved for summary judgment and filed a Local Rule 56.1 statement of facts. The district court deemed the government's facts admitted because On-Site failed to cite admissible evidence in support of its denial of facts in violation of Local Rule 56.1(b). *On-Site Screening, Inc. v. United States*, No. 09 C 6084, 2011 WL 3471068, at *3 (N.D. Ill. Aug. 3, 2011). The court then found that Ellis was a federal law enforcement officer and that she detained On-Site's specimens. *Id.* at *4. Thus, On-Site's claims fell within the law enforcement officer-detaining-property exception to the FTCA's waiver of the federal government's sovereign immunity. *See* 28 U.S.C. § 2680(c). The court also found that Ellis did not seize the property for purposes of forfeiture, *see id.* § 2680(c)(1), and denied On-Site's motion to file an amended complaint because no matter how On-Site characterized its claims, they arose in respect to a law enforcement officer's detention of property making any attempt to amend futile. *On-Site Screening*, 2011 WL 3471068, at *6.

## II. Analysis

The FTCA waives the government's sovereign immunity for money damages claims for the loss of property caused by negligent or wrongful acts or omissions of government employees acting within the scope of their office or employment in circumstances where

a private person would be liable. 28 U.S.C. §§ 1346(b)(1) & 2671-2680. Yet an exception to this waiver applies to claims "arising in respect of . . . the detention of any goods, merchandise, or other property by . . . any other law enforcement officer." 28 U.S.C. § 2680(c). This provision is broad given its use of the expansive term "any," *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 218-19 (2008), and the lack of a textual indication "that Congress intended immunity for those claims to turn on the type of law being enforced," *id.* at 221.

On-Site argues we should use an agency publication discussing seizures and detentions to determine whether the government seized its specimens. *See* U.S. Food and Drug Administration, Inspections, Compliance, Enforcement, and Criminal Investigations, 2.7 Detention Activities, www.fda.gov/ICECI/Inspections/IOM/ucm122515. htm#SUB2.7 (last visited July 20, 2012); U.S. Food and Drug Administration, Inspections, Compliance, Enforcement, and Criminal Investigations, 6-1 Seizure, www. fda.gov/ICECI/ComplianceManuals/Regulatory ProceduresManual/ucm176733.htm (last visited July 20, 2012). On-Site maintains that this publication characterizes the FDA actions as a seizure within the § 2680(c)(1) exception to the exception.

Despite what an agency publication may say, for purposes of interpreting this federal statute, the "ordinary meaning of the words used" governs what constitutes a detention by a law enforcement officer. *See Kosak v. United States*, 465 U.S. 848, 853 (1984) (quoting *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982)). And "the fairest

interpretation" of "'any claim arising in respect of' the detention of goods . . . includes a claim resulting from negligent handling or storage of detained property." *Id.* at 854 (quoting 28 U.S.C. § 2860(c)). The government presented uncontroverted evidence that Ellis detained the specimens as a law enforcement officer for a criminal investigation and not for purposes of forfeiture. The government's evidence included sworn deposition testimony, contemporaneous agency investigation reports, an independent report from the local fire inspectors, and the signed consent to search and seize statement from the laboratory facility's representative. This evidence shows that under any ordinary meaning of the term "detention," Ellis detained the specimens as a law enforcement officer within § 2680(c). *See Kosak*, 465 U.S. at 854 (exception for law enforcement detentions covers property storage and handling).

On-Site fails to point to any evidence showing that there is a genuine dispute over whether a law enforcement officer detained its specimens in the ordinary sense of the word "detained." *See Parrott v. United States*, 536 F.3d 629, 636 (7th Cir. 2008) (discussing what constitutes a "detention"). Even if On-Site is right, and the government in fact seized On-Site's specimens, the seizure of property is a natural and seemingly necessary predicate to the subsequent detention of that property. On-Site's speculation that "for all [On-Site] knows it was indeed for the purpose of forfeiture," Brief for Appellant at 10, is insufficient to avoid summary judgment. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (summary judgment is "put up or shut up" time when

a party "must show what evidence it has that would convince a trier of fact to accept its version of events"). On-Site's allegations about what we don't know, mistaken belief that the district court dismissed its complaint on a motion to dismiss, and counterproductive argument that the FTCA's other exceptions to the federal government's waiver of sovereign immunity somehow save its claims, *see* 28 U.S.C. § 2680(f) (*maintaining* sovereign immunity with respect to claims caused by quarantine) & (h) (likewise with respect to claims arising out of "interference with contract rights"), fail to create a genuine dispute about any material fact.

On-Site also argues that we should preclude the government from asserting sovereign immunity as a defense to this litigation because it did not base its denial of On-Site's administrative claim on that doctrine or claim that a law enforcement official detained the specimens.[2] But executive branch officials cannot waive sovereign immunity, *United States v. Shaw*, 309 U.S. 495, 500-01 (1940)

---

[2] The terminology used by On-Site in making these arguments illustrates a misunderstanding of the principles involved. It asserts that the government cannot raise these defenses because of the "mend the hold" doctrine. There is no way to apply that concept to this litigation for more reasons than need to be spelled out here. It is enough to note that the doctrine applies in breach of contract suits and that it does not prohibit the addition of a defense after suit is filed or otherwise limit a defendant to defenses announced before a suit is filed. *See Ryerson Inc. v. Federal Ins. Co.*, 676 F.3d 610, 614 (7th Cir. 2012).

(only by specific statutory consent may a lawsuit "be brought against the United States"), and the FTCA does not require the pleading of legal theories in the administrative process, *see* 28 U.S.C. § 2675(a) (claim deemed denied if agency doesn't make a final disposition within six months of filing). The government satisfied its burden to assert sovereign immunity by timely raising sovereign immunity as a defense to On-Site's complaint. *See Parrott*, 536 F.3d at 634-35 (FTCA exceptions are not jurisdictional restrictions).

On-Site also fails to show that the district court abused its discretion in denying its request to amend because doing so would be futile. *See Johnson v. Cypress Hill*, 641 F.3d 867, 872 (7th Cir. 2011) (district courts have broad discretion to deny leave to amend "where the amendment would be futile"). On-Site's amended complaint sought compensation from the United States under the FTCA for the destruction of the specimens Ellis took from the Bedford Park laboratory. However characterized, the tort claims raised in the proposed amended complaint fall within the FTCA's preservation of sovereign immunity for claims involving law enforcement officers detaining property, *see* 28 U.S.C. § 2680(c), and don't fit within any of the exceptions to the exception, *see id.* § 2680(c)(1)-(4). Thus, the district court did not abuse its discretion in denying On-Site's request to amend on the basis of futility.

Finally, almost as an aside, On-Site also asks that we declare that it is entitled to a Tucker Act remedy or order the district court not to disturb any potential Tucker

remedy it might have. *See* 28 U.S.C. § 1491. In its reply brief, On-Site faults the district court for not transferring its claims to a court with jurisdiction over Tucker Act claims. On-Site seeks damages far exceeding the $10,000 monetary threshold giving the U.S. Court of Federal Claims exclusive jurisdiction over any potential Tucker claims On-Site might file. *See* 28 U.S.C. § 1346(a)(2). We aren't sure what Tucker remedy On-Site thinks it might have because it does not point to any constitutional, statutory, or regulatory provision that can "fairly be interpreted as mandating compensation." *United States v. Norwood*, 602 F.3d 830, 834 (7th Cir. 2010) (quoting *United States v. Mitchell*, 463 U.S. 206, 217 (1983)). These assertions are so sparse in On-Site's briefs that they could be considered undeveloped and thus waived. *See Argyropoulos v. City of Alton*, 539 F.3d 724, 738 (7th Cir. 2008). But not even the most generous reading of either On-Site's original complaint or its proposed amended complaint hints of a trace of any claim under the Tucker Act, so the district court had nothing to transfer, *see* 28 U.S.C. § 1631 (transfer of cases for want of jurisdiction), and federal courts do not give advisory opinions on claims not before them. *See, e.g., Rodas v. Seidlin*, 656 F.3d 610, 630 (7th Cir. 2011) ("Federal courts are not in that business.").

## III. Conclusion

We AFFIRM the district court's judgment dismissing On-Site's complaint with prejudice.

7-25-12