In the

# United States Court of Appeals

### For the Seventh Circuit

No. 13-3921

THE SMOKE SHOP, LLC,

*Plaintiff-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:12-cv-01186 — **Rudolph T. Randa**, *Judge*.

ARGUED JUNE 2, 2014 — DECIDED AUGUST 4, 2014

Before FLAUM and WILLIAMS, *Circuit Judges*, and DOW, *District Judge*.[*]

FLAUM, *Circuit Judge*. In 2012, the Drug Enforcement Administration seized over $110,000 worth of smokable "incense products" from a Delavan, Wisconsin retailer called The Smoke Shop. At the time of seizure, the DEA believed

---

[*] Of the Northern District of Illinois, sitting by designation.

that the incense products, which contained synthetic canna‐
binoids, were controlled substance analogues and therefore
illegal under federal drug laws. Smoke Shop contested this
assertion and moved for the return of its inventory in federal
district court. Later, the substances in the incense products
were scheduled by the Attorney General, rendering them
contraband. This eliminated Smoke Shop's hopes of recover‐
ing its goods, so it brought a conversion action against the
federal government for damages under the Federal Tort
Claims Act.

The district court dismissed Smoke Shop's FTCA suit on
two alternative grounds. It found, first, that the government
enjoyed sovereign immunity from Smoke Shop's suit under
the detained‐goods exception to the FTCA. Second, the court
found that Smoke Shop failed to exhaust its administrative
remedies because it did not submit a claim for damages to
either the DEA or the Department of Justice before filing
suit. We affirm on both grounds.

## I. Background

This case is before us on a motion to dismiss, so we rely
on the allegations in the plaintiff's complaint, without
vouching for their truth. *Golden v. State Farm Mut. Auto. Ins.
Co.*, 745 F.3d 252, 255 (7th Cir. 2014).

The Smoke Shop is a small retail store in downtown
Delavan that sells assorted novelties, tobacco products,
smoking accessories, and what Smoke Shop describes as "in‐
cense products." As the government's testing later revealed,
the incense products in question contained two marijuana‐
mimicking synthetic cannabinoids, XLR‐11 and UR‐144. *See
generally* Eliza Gray, *The Rise of Fake Pot*, TIME, Apr. 21, 2014,

at 26. Despite these intoxicating properties, Smoke Shop's complaint avows that the incense products are marked "NOT FOR HUMAN CONSUMPTION," and have "numerous legitimate and legal uses … ranging from religious ceremonies to the removal of pet odors."

On September 13, 2012, two DEA agents and three local police officers came into the store and seized 8,000 packages containing several different brands of the incense products. The agents told Smoke Shop's owner, David Yarmo, that they were taking the seized inventory to the local police station for testing, and that Smoke Shop would get back whatever was not found to be illegal. Believing that the products contained no controlled substances, Yarmo consented to their seizure.

Several days later, Yarmo went to the local police station to inquire about his inventory. He was told that the DEA had shipped the products to a federal testing facility, so Yarmo next turned to the DEA. Those agents told Yarmo there was "no way" that the DEA would ever return the incense products and that if Yarmo wanted to get the products back he would have to "sue them."

Smoke Shop then filed a motion for the return of property in federal district court. *See* Fed. R. Crim. P. 41(g) ("A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return … in the district where the property was seized."). In response, the government filed a letter informing the district court that half of the seized products had tested positive for XLR-11 and UR-144, which the DEA considered to be controlled substances under the Controlled Substances Analogue Act, *see* 21 U.S.C. §§ 802(32), 813,

841(a)(1). Because the tested incense products were considered contraband, the government explained, the DEA could not return them. The letter also indicated that the remaining products were due to be tested.

The district court held a hearing on the Rule 41(g) motion in which Smoke Shop's and the government's experts debated whether XLR-11 and UR-144 constituted controlled substance analogues, and the parties continued to brief the issue. While this dispute was ongoing, however, the Attorney General exercised his power under the Controlled Substances Act to schedule XLR-11 and UR-144 as schedule I controlled substances on a temporary basis "to avoid an imminent hazard to the public safety." 21 U.S.C. § 811(h).

As a result of the Attorney General's action, the district court dismissed Smoke Shop's Rule 41(g) motion. The court opined that the Attorney General's "decision to schedule UR-144 and XLR-11 suggests that they were not analogues in the first instance, and now, Mr. Yarmo must recoup his losses through further litigation against the government." *The Smoke Shop, LLC v. United States*, 949 F. Supp. 2d 877, 879 (E.D. Wis. 2013). Accordingly, the court suggested that Smoke Shop amend its pleadings to effect this "further litigation."

Smoke Shop took the court up on its suggestion and filed an amended complaint against the United States for unlawful conversion under the Federal Tort Claims Act, seeking compensatory damages. Smoke Shop alleged that the government took its incense products—collectively worth about $110,000—with no legal grounds to do so, and that the government only later declared the substances in the products illegal.

The district court dismissed Smoke Shop's complaint under Federal Rule of Civil Procedure 12(b)(6) on two independent grounds. First, the court found that Smoke Shop's action was barred by sovereign immunity. Though the FTCA waives the federal government's immunity for the torts of its employees, 28 U.S.C. § 1346(b)(1), claims arising from the detention of goods by law enforcement officers are excepted from that waiver, *id.* § 2680(c). To make matters more complicated, the Civil Asset Forfeiture Reform Act amended § 2680(c) to "re-waive" the government's immunity in detention-of-goods cases where the goods were "seized for the purpose of forfeiture" and certain other requirements are met. *See id.* § 2680(c)(1)–(4). However, the district court found that CAFRA's re-waiver did not apply to Smoke Shop's claim because the DEA did not, in fact, seize the incense products for the purpose of forfeiture—it seized them in connection with a criminal investigation.

The district court also concluded that Smoke Shop failed to exhaust its administrative remedies. Before a plaintiff can bring an FTCA action in court, she must present an FTCA "claim" to the appropriate federal agency within two years after the claim accrues. *See id.* §§ 2401(b), 2675(a). The district court found that Smoke Shop's Rule 41(g) motion did not qualify as a claim for money damages under § 2675(a), and that its FTCA action was therefore barred.[1]

---

[1] The government moved to dismiss the complaint under both Rule 12(b)(1) (lack of subject-matter jurisdiction) and Rule 12(b)(6) (failure to state a claim). The district court correctly dismissed the complaint pursuant to Rule 12(b)(6). We have held that "the statutory exceptions enumerated in [28 U.S.C.] § 2680(a)–(n) … limit the breadth of the Government's waiver of sovereign immunity [under the FTCA], but they do not

## II. Discussion

We review the district court's grant of a motion to dismiss de novo. *Augutis v. United States*, 732 F.3d 749, 752 (7th Cir. 2013).

## A. The FTCA's detained-goods exception and CAFRA's re-waiver provision

The detained-goods exception to the FTCA preserves the federal government's immunity from suits arising from "the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer." 28 U.S.C. § 2680(c); *see also Ali v. Fed. Bureau of Prisons*, 552 U.S. 214 (2008) (holding that § 2680(c) covers law enforcement officers of any kind). But in 2000, Congress, "reacting to public outcry over the government's too-zealous pursuit of civil and criminal forfeiture," passed the Civil Asset Forfeiture Reform Act. *United States v. Khan*, 497 F.3d 204, 208 (2d Cir. 2007). Among other reforms, CAFRA "re-waived" the government's immunity—that is, once more opened the government up to suit under the FTCA—for tort actions stemming from law-enforcement detentions of property. But CAFRA's exception-to-the-exception only applies if four conditions are met:

---

accomplish this task by withdrawing subject-matter jurisdiction from the federal courts." *Parrott v. United States*, 536 F.3d 629, 634 (7th Cir. 2008). Similarly, the FTCA's administrative exhaustion requirement is better thought of as a "condition precedent to the plaintiff's ability to prevail," not a jurisdictional rule (as we will discuss in part II.B). *Kanar v. United States*, 118 F.3d 527, 530 (7th Cir. 1997); *accord Glade ex rel. Lundskow v. United States*, 692 F.3d 718, 723 (7th Cir. 2012).

(1) the property was seized for the purpose of forfeiture under any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense;

(2) the interest of the claimant was not forfeited;

(3) the interest of the claimant was not remitted or mitigated (if the property was subject to forfeiture); and

(4) the claimant was not convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law.

28 U.S.C. § 2680(c).

We must decide whether the DEA's seizure and detention of Smoke Shop's incense products qualifies for CAFRA's re-waiver. The first condition is the one the parties contest: whether the products were "seized for the purpose of forfeiture," a phrase to which our court has yet to give a definitive construction.

Adopting the reasoning of *Foster v. United States*, 522 F.3d 1071 (9th Cir. 2008), the district court found that CAFRA's re-waiver did not apply to these facts. *Foster* interpreted the requirement that the property have been "seized for the purpose of forfeiture" to mean that the property must have been seized *solely* for the purpose of forfeiture. *Id.* at 1075. The Ninth Circuit thus held that "the fact that the government may have had the possibility of a forfeiture in mind when it seized Plaintiff's property" was insufficient to bring

the detention within the scope of CAFRA's re-waiver "when criminal investigation was [also] a legitimate purpose of the initial seizure." *Id.* In other words, the Ninth Circuit interpreted § 2680(c)(1) to preserve the government's immunity whenever a federal officer seized the plaintiff's property pursuant to a criminal investigation *at least in part*—even if the officer may have envisioned that the goods would be forfeited down the line.

The Ninth Circuit reasoned that its interpretation gave effect to the congressional purposes behind the FTCA's detained-goods exception, including "ensuring that certain governmental activities not be disrupted by the threat of damage suits." *Kosak v. United States*, 465 U.S. 848, 858 (1984) (internal quotation marks omitted); *see also Foster*, 522 F.3d at 1078. Reading CAFRA's re-waiver as extending to any law enforcement investigation in which the officers might contemplate forfeiture would undermine that objective. For instance, "[a]ny waiver of sovereign immunity for damage to [property seized during an investigation] could hamper law enforcement officers' effectiveness in carrying out the important purposes underlying the seizure and redirect their attention from the possibility of danger in executing the search warrant to the possibility of civil damages." *Foster*, 522 F.3d at 1078.

The Ninth Circuit also grounded its reading in § 2680(c)(1)'s text. The court explained that "the statute's use of the definite phrase 'the purpose of forfeiture,' as opposed to an indefinite phrase 'a purpose of forfeiture,' suggests that the property be seized *only* for the purpose of forfeiture. Had Congress drafted the text to provide for re-waiver 'if the property was *seized and forfeited*,' then it would apply when

both purposes underlie a single seizure. Congress, however, did not do so." *Id.* at 1077–78.

Our court has not adopted *Foster*'s "sole-purpose test" in applying CAFRA's re-waiver provision. However, we employed *Foster* in an unpublished decision (as have two other circuits). *Pearson v. United States*, 373 F. App'x 622, 624 (7th Cir. 2010); *Shigemura v. United States*, 504 F. App'x 678, 680 (10th Cir. 2012); *Bowens v. U.S. Dep't of Justice*, 415 F. App'x 340, 343 (3d Cir. 2011). And in another case, we more or less applied *Foster*'s logic: we found that because the government demonstrated that a detention occurred "for a criminal investigation and not for purposes of forfeiture," CAFRA's re-waiver did not apply. *On-Site Screening, Inc. v. United States*, 687 F.3d 896, 898 (7th Cir. 2012).

We now formally adopt *Foster*'s sole-purpose test. We agree that an alternative reading of § 2680(c)(1)—one that would waive the government's immunity whenever an officer envisioned the possibility of the seized goods' forfeiture—would eviscerate the FTCA's detained-goods exception in the context of criminal investigations. When the government seizes property for law enforcement purposes, "in practice, forfeiture often follows eventually. Thus, in every criminal seizure the government necessarily must anticipate at least the possibility of a future forfeiture, a dual motivation that would be nearly impossible to disprove in any particular case." *Foster*, 522 F.3d at 1079.

We would be wary of the *Foster* interpretation if it marginalized CAFRA's re-waiver. After all, Congress meant to carve out some category of detained-goods suits and render the government liable on those claims. But the legislative history of CAFRA suggests that the seizure of property pur-

suant to *a criminal investigation* was not the problem Congress was seeking to address. Instead, CAFRA's reforms targeted the abuse of *forfeiture actions*, which—like criminal investigations—are often carried out by law enforcement pursuant to seizure warrants. *See* 18 U.S.C. § 981(b)(2) ("Seizures pursuant to this section shall be made pursuant to a warrant obtained in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure … ."). A House Judiciary Committee report shows that Congress was predominantly concerned with making property owners whole where the government unsuccessfully brings a forfeiture action and damages or loses the seized property while the action is pending. *See* H.R. Rep. No. 106–192, at 18 (1999) ("Seized property awaiting forfeiture can be quickly damaged … . It cannot be categorized as victory when a boat owner gets back, for instance, a rusted and stripped hulk of a vessel."). In an earlier report, the House Judiciary Committee described CAFRA's proposed changes to the FTCA as allowing "property owners who prevail in forfeiture actions [to] sue the government for any negligent destruction or damage to the property." H.R. Rep. No. 105-358, at 49 (1997). Our adoption of *Foster* thus leaves CAFRA's exception intact in the areas where it was intended to be employed.

Indeed, Smoke Shop frames its argument in *Foster*'s terms. That is, Smoke Shop argues that the incense products *were* seized for the sole purpose of forfeiture—which, if plausibly alleged in the complaint, would permit Smoke Shop to take advantage of CAFRA's re-waiver. In support of its claim that the DEA was not pursuing a criminal investigation when it seized the products, Smoke Shop points out that the DEA did not have a search warrant to search the store, and that no federal criminal charges were ever filed

against the business or Yarmo. Smoke Shop also stresses that a DEA agent told Yarmo that he would never get his products back and that he would have to file suit. Smoke Shop acknowledges that the government never initiated a forfeiture action with respect to the seized goods. But it argues that a formal action was unnecessary, because under 21 U.S.C. § 881(f), controlled substances are summarily forfeited. *See id.* § 881(f)(1) ("All controlled substances in schedule I or II that are possessed, transferred, sold, or offered for sale … shall be deemed contraband and seized and summarily forfeited to the United States."). Because the government viewed these incense products as contraband all along, Smoke Shop argues, it must have envisioned the products' forfeiture under 21 U.S.C. § 881 from the moment it seized them.

But Smoke Shop's theory is unpersuasive. First, though it invokes 21 U.S.C. § 881 to support its argument that the seizure was "for the purpose of forfeiture" under 28 U.S.C. § 2680(c)(1), Smoke Shop does not realize that § 881 would seem to wholly undermine its case that it meets the condition set out in § 2680(c)(2): that "the interest of the claimant was not forfeited." Putting aside the parties' disagreement over whether the incense products constituted controlled substance analogues at the time of their initial seizure, there is now no dispute that these products are schedule I controlled substances as a result of the Attorney General's scheduling them. As such, by operation of § 881(f)(1), Smoke Shop's interest in the products *was* forfeited. And this result makes sense: we imagine that Congress did not intend for plaintiffs to obtain damages for lost items that were eventually deemed contraband (even if the plaintiff tried to fight that designation initially, as Smoke Shop did here). That

said, the government never raised this argument about the interaction between 21 U.S.C. § 881(f)(1) and 28 U.S.C. § 2680(c)(2).

In any event, Smoke Shop's complaint fails to make out a plausible case that its situation qualifies for § 2680(c)(1). Though we accept the facts alleged in the complaint as true, Smoke Shop's assertion that "[t]he defendants seized the property for the purpose of forfeiture" is the type of legal conclusion not entitled to this presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Putting statements like these aside, we must determine whether the remaining factual allegations "plausibly suggest an entitlement to relief." *Id*. at 681. "If the allegations give rise to an obvious alternative explanation, then the complaint may stop short of the line between possibility and plausibility of entitlement to relief." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (alterations, citations, and quotation marks omitted).

When examined in context, the facts alleged in Smoke Shop's complaint give rise to an obvious alternative explanation: that the DEA seized Smoke Shop's inventory in connection with its investigation of a possible drug crime. DEA agents raided the store with local law enforcement officers in tow. The agents did not have a search warrant, but they didn't need one, as Yarmo consented to the search and seizure of his inventory. All along, the DEA maintained that it was testing the products to see if they contained an illegal substance under federal drug laws. And sure enough, tests revealed that the products did contain substances that the government considered illegal under the Controlled Substances Analogue Act.

True, the government never charged Smoke Shop with a crime. But just because the government had not yet indicted does not mean that we must assume—contrary to the circumstances of the seizure and testing—that one was not contemplated. And in fact, Smoke Shop tells us in its brief on appeal that six months after the seizure, Yarmo was served with a grand jury subpoena seeking financial documents and other information from Smoke Shop. We may "consider new factual allegations raised for the first time on appeal provided they are consistent with the complaint," *Chavez v. Ill. State Police*, 251 F.3d 612, 650 (7th Cir. 2001), and this allegation further confirms our commonsense intuition that the DEA was conducting a criminal investigation. *Cf. McCauley*, 671 F.3d at 616 ("Making the plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679)). Thus, Smoke Shop has not plausibly alleged that the DEA seized the incense products solely for the purpose of forfeiture. This situation therefore falls outside the scope of CAFRA's re-waiver provision—and within the scope of the detained-goods exception—and the district court was right to dismiss Smoke Shop's FTCA suit on this ground.

**B. Presentation of a claim under 28 U.S.C. § 2675(a)**

We also affirm the district court on its alternative holding: Smoke Shop's failure to exhaust its administrative remedies before filing its FTCA action.

28 U.S.C. § 2675(a) states that "[a]n action shall not be instituted upon a claim against the United States for money damages for … loss of property … unless the claimant shall have first presented the claim to the appropriate Federal

agency and his claim shall have been finally denied by the agency in writing." In other words, the FTCA bars would-be tort plaintiffs from bringing suit against the government unless the claimant has previously submitted a claim for damages to the offending agency, because Congress wants agencies to have an opportunity to settle disputes before defending against litigation in court. *See McNeil v. United States*, 508 U.S. 106, 112 & n.7 (1993).

The term "claim" is undefined in the statute. But a corresponding regulation instructs that a proper administrative claim under the FTCA contains four elements: (1) notification of the incident; (2) a demand for money damages in a sum certain; (3) the title or legal capacity of the person signing; and (4) evidence of the person's authority to represent the claimant. 28 C.F.R. § 14.2(a); *see also Kanar v. United States*, 118 F.3d 527, 528 (7th Cir. 1997).

Several courts consider 28 U.S.C. § 2675(a)'s exhaustion requirement to go to the court's subject-matter jurisdiction over the FTCA action, *see, e.g.*, *Valadez-Lopez v. Chertoff*, 656 F.3d 851, 855 (9th Cir. 2011); *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 852 (10th Cir. 2005), and one of our early decisions confronting the meaning of the FTCA's administrative claim requirement, *Best Bearings Co. v. United States*, 463 F.2d 1177, 1179 (7th Cir. 1972), operated under this same assumption. For many of those courts (though not *Best Bearings*), it followed that the definition in 28 C.F.R. § 14.2(a) was not authoritative, because the Attorney General lacked the delegated power from Congress to determine the extent of Article III jurisdiction. *See, e.g.*, *GAF Corp. v. United States*, 818 F.2d 901, 920 & n.110 (D.C. Cir. 1987).

However, our court no longer treats § 2675(a) as a jurisdictional prerequisite. *See Glade ex rel. Lundskow v. United States*, 692 F.3d 718, 723 (7th Cir. 2012). And for good reason: For the federal courts to adjudicate a case, there must be a case or controversy within the meaning of Article III (a requirement not at issue here), and a statutory grant of authority (here, the provision of the FTCA, 28 U.S.C. § 1346(b)(1), granting federal courts the authority to adjudicate actions for the torts of government employees). Section 2675(a)'s exhaustion requirement is neither of these; it is better characterized as a "condition precedent to the plaintiff's ability to prevail." *Kanar*, 118 F.3d at 530. Read this way, the word "claim" in § 2675(a) is simply a term in need of definition—i.e., a statutory gap for the Attorney General to fill pursuant to congressional delegation. *Id.* And our reading of § 2675(a) better aligns with the Supreme Court's guidance that the label "jurisdictional" should be used "not for claim-processing rules, but only for prescriptions delineating the classes of cases … falling within a court's adjudicatory authority." *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004); *accord Gonzalez v. Thaler*, 132 S. Ct. 641, 648–49 (2012).

In any event, as a result of our decision in *Kanar*, there is not much of a practical difference between our circuit's position—which considers 28 C.F.R. § 14.2(a) to be definitional—and the circuits that consider § 2675(a) as limiting the federal courts' power to adjudicate FTCA actions. The courts in the latter category require a claimant to file "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim." *Blair v. IRS*, 304 F.3d 861, 864 (9th Cir. 2002); *accord GAF Corp.*, 818 F.2d at 919 n.106 (collecting cases). By its terms, the regulation demands slightly more. *See* 28 C.F.R. §

14.2(a) (including the additional requirement that the person signing establish her title and authority to pursue the claim). But in *Kanar*, we reasoned that § 2675(a) does not require would-be FTCA plaintiffs to comply with "every jot and tittle" of the regulation. 118 F.3d at 530. So long as the proper agency had the opportunity to settle the claim for money damages before the point of suit, we said, technical deficiencies in the administrative claim could well be a case of "[n]o harm, no foul." *Id.* at 531. Thus, the underlying purpose of our approach to § 2675(a)'s requirement—like the courts that eschew the regulation—is to ensure that the claimant "does not hinder the settlement process that a claim is supposed to initiate." *Id*.

Smoke Shop admits that it did not file a formal administrative claim with the DEA or the U.S. Attorney's office before filing its FTCA action. But Smoke Shop maintains that its motion to the district court under Federal Rule of Criminal Procedure 41(g) gave the government constructive notice of its claim—so, no harm, no foul. The district court disagreed, concluding that asking for the return of seized property is not the equivalent of presenting a proper administrative claim under the FTCA.

Smoke Shop's Rule 41(g) motion certainly satisfied the first, third, and fourth requirements of 28 C.F.R. § 14.2(a). But the government maintains that the Rule 41(g) motion lacked the second requirement: a demand for money damages in a sum certain. Smoke Shop merely asked for the incense products back—it made no claim to money damages should the property not be returned.

Smoke Shop's omission of the money-damages element is only fatal if it can be said to have "hinder[ed]" or "thwart-

ed" the settlement process "that Congress created as a prelude to litigation." *Kanar*, 118 F.3d at 531. Unfortunately for Smoke Shop, we have never held that a request for the return of property—unaccompanied by a statement that the claimant would seek money damages if the property was not returned—satisfies § 2675(a). In fact, in *Best Bearings*, we said just the opposite. 463 F.2d at 1179 ("The request for return of the [seized] bearings was not presentation of plaintiff's claim to the government agency as required by § 2675(a) … ."). True, *Best Bearings* assumed that § 2675(a) was a jurisdictional requirement, a position we have now abandoned. *See Glade*, 692 F.3d at 723. Yet this conceptual shift does not undermine the logical underpinnings of *Best Bearings*' holding that a request for the return of seized property is not the equivalent of a demand for money damages. Yarmo did submit a declaration that itemized the seized inventory, including each product's respective value. But it was by no means clear that Smoke Shop was asking the government for money damages in those amounts in lieu of the property's return—it seems that Yarmo merely wanted to convey to the court the importance of the loss to his business. Thus, Smoke Shop simply did not tell the government that it intended to bring a tort suit against it.

Smoke Shop argues that it put the government on constructive notice that it intended to fight this matter. It was foreseeable to the government, Smoke Shop argues, that if the attempt to get the products back using Rule 41(g) didn't work, Smoke Shop would likely seek money damages next. But Smoke Shop loses sight of the fact that the FTCA is an exception to the immunity the federal government ordinarily enjoys from tort actions. As such, Congress can make "[m]en … turn square corners" before haling the govern

ment into court—"[i]f [the government] attaches even purely formal conditions to its consent to be sued those conditions must be complied with." *Rock Island, A. & L. R. Co. v. United States*, 254 U.S. 141, 143 (1920) (Holmes, J.); *cf. McNeil*, 508 U.S. at 111–13 (submitting a claim after initiating FTCA litigation does not fulfill § 2675(a), even if the litigation has not advanced substantially). Congress decided that it wanted agencies to have a chance to settle damages claims before facing litigation. And without being presented with an actual claim for money damages, the DEA and the U.S. Attorney's office were ill-equipped to make a fully informed assessment of Smoke Shop's claim.

As in our past cases, Smoke Shop's oversight hindered or thwarted the settlement process envisioned by the FTCA. *See Kanar*, 118 F.3d at 531 (attorney's failure to comply with the agency's request that he provide proof of his capacity to represent the claimant hindered the settlement process and barred the claimant's FTCA suit); *Best Bearings*, 463 F.2d at 1179 (business's request to the FBI and the U.S. Attorney's office for the return of seized property did not satisfy § 2675(a)); *Antonelli v. Sherrow*, 246 F. App'x 381, 385 (7th Cir. 2007) (prisoner's letters to ATF agents demanding the return of a seized computer did not qualify as FTCA claims because the letters did not request money damages). In all of those cases, the agency had the same "constructive notice" of the claimant's position that Smoke Shop alleges the DEA had here. But constructive notice that an individual has a grievance with the agency does not facilitate settlement negotiation of the individual's claim for money damages—or at least, not as directly as the FTCA demands.

Nothing prevented Smoke Shop from submitting an administrative claim to the government at the time of the seizure. In fact, Smoke Shop's failure to do so—and its decision to file a criminal procedure motion with the district court instead—may have led the government to believe that Smoke Shop was forgoing the civil-litigation route, or at least that Smoke Shop was not contemplating it at that time. Thus, Smoke Shop's failure to exhaust is a second ground for us to affirm the district court.[2]

### III. Conclusion

Smoke Shop's action is barred by the detained-goods exception to the FTCA. Smoke Shop also failed to exhaust its administrative remedies by submitting a proper claim for money damages before filing its FTCA suit. We thus AFFIRM the district court's dismissal of Smoke Shop's suit.

---

[2] In its brief on appeal, Smoke Shop also argues that "[c]onstruing the statutes as the district court did ignores the promise of the due process clause of the Fifth Amendment that property will not be taken absent due process." Smoke Shop's argument on this front is waived, as it did not pursue a due process theory in the district court, and we find that its constitutional argument—comprised of ipse dixit and little else—is undeveloped on appeal. *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012).