Barrett, Circuit Judge.
Before bringing a tort claim against the United States, a plaintiff must first exhaust her administrative remedies by presenting her claim to the appropriate federal agency. This means, among other things, that the plaintiff must demand a sum certain from the agency. Anna Chronis did not make such a demand before she sued, so the district court properly dismissed her complaint.
I.
In June 2015, Anna Chronis visited the University of Illinois Mile Square Health Center for her annual physical examination. The examination included a pap smear-a procedure used to detect cervical cancer-that Chronis alleges caused her pain and bruising. She claims that she tried to follow up on the examination with the physician, Dr. Tamika Alexander, but was unable to get in touch with her. She also says that the Health Center did not return her calls or allow her to make a follow-up appointment. Chronis filed a written complaint with the Health Center's grievance committee, requesting $332 for the expenses that she incurred because of the injury. But after reviewing her complaint, the Health Center rejected her request.
After her request was denied, Chronis sent a letter to the Centers for Medicare and Medicaid Services (CMS), an agency within the U.S. Department of Health and Human Services. In her letter, she requested "assistance in resolving a frustrating process of delay, unfulfilled promises, and documented willful ignorance of policy and procedures." Though her letter mentioned the injuries that she allegedly sustained during her examination, it devoted most of its attention to the Health Center's lack of responsiveness to her complaints. It also included a general statement that she wanted assistance in "receiving the restitution." The conclusion of her letter summarized what she was asking for: "I have enclosed all relevant, previous correspondence between UIC Health, and myself, and look forward to your guidance on how to proceed." Chronis also attached roughly sixty pages of documents relating primarily to the correspondence between Chronis and the Health Center. One of the pages included the fact that Chronis had previously sought $332 from the Health Center.
Believing that Chronis was seeking advice about how to make an administrative complaint against the doctor and Health Center, CMS replied by directing her to contact the Illinois Department of Financial and Professional Regulation so that *546 she could file a formal complaint. CMS also invited Chronis to follow up if she needed any additional assistance.
More than six months later, Chronis filed a pro se complaint in state court, alleging malpractice against Alexander and the Health Center. Because the Health Center receives federal funds from the Public Health Service and Alexander is a Health Center employee, the United States substituted itself as the sole defendant and removed the case to federal court to proceed under the Federal Tort Claims Act. See 42 U.S.C. § 233 ; 28 U.S.C. § 1346.[1] The government then moved to dismiss, arguing that Chronis had not exhausted her administrative remedies because she had failed to first present her claim to the appropriate federal agency. It argued that her letter to CMS did not meet this requirement.
The district court granted the government's motion and dismissed the complaint. It explained that Chronis's letter to CMS notified the agency only that she was pursuing "professional regulation allegations," as opposed to making an administrative demand-and thus failed to present a claim.
Chronis timely appealed pro se, and we appointed amicus curiae to assist in her appeal.[2] Amicus argues that Chronis exhausted her administrative remedies when she sent the letter to CMS. We disagree.
II.
Under the Federal Tort Claims Act, a plaintiff may bring a medical malpractice claim against the United States only after exhausting administrative remedies. 28 U.S.C. §§ 2401(b), 2675. To exhaust administrative remedies, the plaintiff must "have first presented the claim to the appropriate Federal agency," id. § 2675, so that the agency has an opportunity to meaningfully consider and address the claim prior to suit, see Kanar v. United States , 118 F.3d 527, 528 (7th Cir. 1997) ; Mader v. United States , 654 F.3d 794, 801 (8th Cir. 2011) (en banc) (explaining that the agency must have "a fair opportunity to meaningfully consider, ascertain, adjust, determine, compromise, deny, or settle FTCA claims prior to suit"). A claim has been presented to a federal agency once the plaintiff submits "an executed Standard Form 95 or other written notification *547 of an incident, accompanied by a claim for money damages in a sum certain." 28 C.F.R. § 14.2(a) ; see also Kanar , 118 F.3d at 528. We have held that this presentment requirement has four elements: (1) notification of the incident; (2) demand for a sum certain; (3) title or capacity of the person signing; and (4) evidence of the person's authority to represent the claimant. Kanar , 118 F.3d at 528. Chronis's letter fails to satisfy the second element of the presentment requirement.
Even liberally construed and read through the eyes of a "legally sophisticated reader," Chronis's letter does not contain a demand for money damages in a sum certain. See Buechel v. United States , 746 F.3d 753, 760 (7th Cir. 2014). The closest that the letter comes to requesting any money at all is a vague request for help in "receiving restitution." Perhaps recognizing that this vague reference falls short of the mark, amicus argues that Chronis implicitly demanded a sum certain because one of the letter's many attachments revealed that she once sought $332 from the Health Center. But she simply attached this, along with what amicus acknowledged were as many as sixty pages of attachments, as background information. And in any event, although the dissent makes much of these attachments, we have said before that we will not force agencies to search for claims buried within pages and pages of attachments. See Deloria v. Veterans Admin. , 927 F.2d 1009, 1012 (7th Cir. 1991) (explaining that claims that "may be gleaned" from a sixty-three-page appendix to an administrative filing have not been asserted for purposes of exhaustion).[3]
To be sure, failing to put a number on the amount demanded is not necessarily fatal. See Smoke Shop, L.L.C. v. United States , 761 F.3d 779, 787 (7th Cir. 2014). It is "only fatal if it can be said to have 'hindered' or 'thwarted' the settlement process 'that Congress created as a prelude to litigation.' " Id. (quoting Kanar , 118 F.3d at 531 ); see also Khan v. United States , 808 F.3d 1169, 1172 (7th Cir. 2015) (explaining that a precise sum of money is not always required because its absence typically won't "derail the settlement process"). But a claimant who neither makes it clear that she is demanding money from the agency nor says how much she is demanding thwarts the settlement process envisioned by the FTCA. See Smoke Shop , 761 F.3d at 788 (asserting that "without being presented with an actual claim for money damages, the [government is] ill-equipped to make a fully informed assessment" concerning a plaintiff's claim). How can an agency assess whether to make a settlement offer if it isn't aware that a demand is being made, let alone how much is at stake?
Take the facts here: believing that Chronis's letter was simply requesting advice *548 about how to file an administrative complaint against the Health Center, the agency responded by providing information about how to file a formal complaint with the Illinois Department of Financial and Professional Regulation. The agency didn't have a chance to begin the settlement process because nothing in the letter put it on notice that Chronis was asserting a claim against it. Chronis's failure to make a clear demand of CMS "frustrate[d] the process of conciliation and settlement that the administrative demand is supposed to initiate." See Kanar , 118 F.3d at 531.
Indeed, the letter shows that Chronis wanted something other than money from CMS. The conclusion of her letter said it best: she wanted "guidance on how to proceed." Requesting guidance is different than requesting money. And we have emphasized that a letter requesting "something other than money" fails to constitute an administrative demand for money. See Khan , 808 F.3d at 1173 (concluding that the claimant failed to make a demand because he "was seeking something other than money-such as an apology for the misconduct of the arresting marshals, or punishment of them, or better training of marshals"); Smoke Shop , 761 F.3d at 787 ("Unfortunately for Smoke Shop, we have never held that a request for the return of property-unaccompanied by a statement that the claimant would seek money damages if the property was not returned-satisfies the [money-damages element].").
In a final effort to show that Chronis actually made a demand for monetary damages, amicus points to a single phrase in her letter stating that she had to "pay out of pocket for follow up that resulted from [Dr. Alexander's] malpractice and gross negligence." But this wasn't a demand. It was just background information, explaining Chronis's frustration with her care. Especially in light of the rest of the letter, which made clear that Chronis was seeking advice, this alone could not have put the agency on notice that Chronis intended to file an administrative demand. See Palay v. United States , 349 F.3d 418, 426 (7th Cir. 2003) (explaining that a claimant must provide "sufficient notice to enable the agency to investigate the claim" (citation omitted)).
We stress that our precedent does not make it difficult for pro se plaintiffs to sue the federal government. In almost any other circuit, Chronis's claim would have failed for not including a sum certain. See, e.g. , White-Squire v. U.S. Postal Serv. , 592 F.3d 453, 457 (3d. Cir. 2010) ("Providing a sum certain claim for damages is central to [the] policy of requiring presentment of claims to the appropriate federal agency because it enables the agency head to determine whether the claim can legally be settled by the agency and, if so, from where the payment should come ... [and] it goes without saying that an agency cannot consider settling a claim if it cannot ascertain the claim's value."); Kokotis v. U.S. Postal Serv. , 223 F.3d 275, 278 (4th Cir. 2000) (holding that a district court lacks jurisdiction over an FTCA suit if the "administrative claim [did] not indicate a specific amount of money."). And as we noted earlier, we insist that pro se administrative complaints receive a liberal construction. See Buechel , 746 F.3d at 760. But there is a difference between generously construing a pro se complaint and effectively excusing a pro se plaintiff from the statutorily mandated exhaustion requirement.[4] Characterizing Chronis's request *549 for guidance as a demand for money would pull us into the latter territory.
In short, Chronis "simply did not tell the government that [she] intended to bring a tort suit against it." See Smoke Shop , 761 F.3d at 788. She did not have to use lawyerly language to communicate that message. But she had to make it "clear to a legally sophisticated reader" that she was demanding payment from CMS. See Delgado v. Merit Sys. Prot. Bd. , 880 F.3d 913, 925 (7th Cir. 2018) (emphasis added). Her failure to make a clear demand meant that CMS lacked "a fair opportunity to meaningfully consider, ascertain, adjust, determine, compromise, deny, or settle FTCA claims prior to suit." Mader , 654 F.3d at 801 ; see also Palay , 349 F.3d at 426.
We conclude with a final observation. This case has been litigated as if it is about Chronis's frustrated effort to put the Department of Health and Human Services (through its sub-agency, CMS) on notice that she was demanding money from it. The real problem, however, is that Chronis had no idea that the Department might owe her money. It is unsurprising that Chronis, a pro se plaintiff, didn't know that the Health Center and Alexander would be treated as Public Health Service employees covered by the Federal Tort Claims Act. That is a mistake that even an experienced medical malpractice lawyer can make. See , e.g. , Phillips v. Generations Family Health Ctr. , 723 F.3d 144, 148 (2d Cir. 2013) (plaintiff's lawyer failed to satisfy the exhaustion requirement because he failed to discover that the defendant clinic was a "deemed federal employee"). But the way to fix it is not for the court to read the presentment requirement out of the Federal Tort Claims Act. It is for the plaintiff to exhaust her administrative remedy once the error is discovered. If a plaintiff is within the statute of limitations, she can do that easily by asserting an administrative claim and returning to federal court if the claim does not settle. See , e.g. , Alexander v. Mount Sinai Hosp. Med. Ctr. , 484 F.3d 889, 892 (7th Cir. 2007).[5] If the statute of limitations has expired, it is still possible, though it is more difficult, to remedy the mistake: the plaintiff can assert an administrative claim, and if the agency denies it, she can sue again and ask the court to equitably toll the statutory clock. See United States v. Kwai Fun Wong , --- U.S. ----, 135 S. Ct. 1625, 1633, 191 L.Ed.2d 533 (2015) (holding that a court can equitably toll the the Federal Tort Claims Act's statute of limitations); Arteaga v. United States , 711 F.3d 828, 833-35 (7th Cir. 2013) (considering whether to equitably toll the statute of limitations when the plaintiff's lawyer failed to discover that the defendant health center was "deemed federal"); Phillips v. Generations Family Health Ctr. , 657 Fed. App'x 56 (2d Cir. 2016) (same). No one has discussed *550 the statute of limitations in this case, so it is unclear which situation Chronis is in. We raise the issue simply to note that this problem can be fixed, but not in the way that Chronis is seeking to do it.
Because the district court correctly held that Chronis failed to satisfy the exhaustion requirement, its judgment is AFFIRMED.

The Federally Supported Health Centers Assistance Act permits the Secretary of Health and Human Services to deem certain federally funded community health centers, along with certain individuals affiliated with them, to be employees of the federal Public Health Service for purposes of the Federal Tort Claims Act. See 42 U.S.C. §§ 254b & 233(g) ; see also 42 C.F.R. § 6.3 -6.6. This designation enables centers caring for underserved populations to spend their money on patient care rather than malpractice premiums. See Dedrick v. Youngblood , 200 F.3d 744, 745 (11th Cir. 2000) ("The Act essentially makes the U.S. government the medical malpractice insurer for qualifying [ ] health centers, their officers, employees, and contractors, allowing these 'deemed' health centers to forgo obtaining private malpractice insurance."). Within 15 days of receiving notice that a covered entity or individual has been sued, the Attorney General "shall make an appearance ... and advise the court" whether the defendant "is deemed to be an employee of the Public Health Service for purposes of this section with respect to the actions or omissions that are the subject of such civil action or proceeding." 42 U.S.C. § 233(l)(1). If the Attorney General certifies the defendant as a Public Health Service employee, the Attorney General must remove the proceeding to federal district court. Id. § 233(c). In this suit, the Attorney General's designee made this certification for both the University of Illinois Mile Square Health Center and Alexander.

The court expresses its thanks to Travis S. Andrews for accepting the appointment of amicus curiae and submitting an excellent brief and argument.

The dissent argues that we are wrong to rely on Deloria rather than Palay v. United States , 349 F.3d 418, 426 (7th Cir. 2003). But Palay addresses a different issue than Deloria . Neither Palay nor the case that it relies on, Murrey v. United States , 73 F.3d 1448, 1452 (7th Cir. 1996), consider whether the claim itself can be buried in the attachments. In those cases, there was no question that the plaintiffs had filed claims; on the contrary, both had submitted a Form 95. The only question was whether the plaintiffs had included sufficient factual detail to support their respective claims. See Palay , 349 F.3d at 425-26 ; Murrey , 73 F.3d at 1452-53 ; see also id. at 1452 (noting that Form 95 requires "a detailed statement of facts" and is "in this respect more demanding, more 'formal' if you will, than the civil rules-a throwback, perhaps, to the era of 'fact pleading' that preceded the adoption of those rules."). Deloria , however, dealt with whether a claim itself could be asserted if it was buried in the attachments, not whether supporting facts had been alleged. 927 F.2d at 1012. Deloria 's issue is the one that we face here.

There are tools available to help a pro se plaintiff meet the exhaustion requirement. For example, she can fill out Form 95, which spells out the required information and is easily accessible on the Department of Justice website. See, e.g. , Buechel v. United States , 746 F.3d 753, 758-59 (7th Cir. 2014) (pro se claim filed using Form 95); see also https://www.justice.gov/civil/documents-and-forms-0.

A plaintiff's ability to pursue this course is enhanced by the Westfall Act, which stops the clock when a plaintiff's suit is dismissed for violating the Federal Tort Claims Act's exhaustion requirement. See Dupree v. United States , 495 F. App'x 422, 424 (5th Cir. 2012) ("If a claim is removed from state court and then dismissed for failure to exhaust administrative remedies, the claim is deemed to be timely presented and the plaintiff may recommence her suit if she presents the claim to the appropriate federal agency within 60 days of dismissal, and if 'the claim would have been timely had it been filed on the date the underlying civil action was commenced.' " (quoting 28 U.S.C. § 2679(d)(5) ). At oral argument, the government stated that Chronis filed an administrative claim against the Department of Health and Human Services around the time that the district court dismissed the suit. It might be, then, that she can still file a timely suit under the Federal Tort Claims Act if the agency denies her claim.